Leonard LONG

v.

KRUEGER, INC. and
Cutler–Federal, Inc., et al.

Civ. A. No. 86–4235.

United States District Court,
E.D. Pennsylvania.

April 21, 1988.

Fincourt B. Shelton, Philadelphia, Pa., for plaintiff.

Francis T. McDevitt, Joseph P. Gallagher, Philadelphia, Pa., for defendants.

MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

Before me are DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, filed by defendant Krueger, Inc. (Krueger) on November 17, 1987, and MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, CUTLER–FEDERAL, INC. (Cutler), filed November 19, 1987. Defendants claim that plaintiff has not and cannot prove who manufactured a certain stool which allegedly injured the plaintiff. After hearing oral argument on these motions and after reviewing the briefs of counsel, I feel I should grant both motions.

The applicable law has been stated many times. Fed.R.Civ.P. 56(c) instructs a court to enter summary judgment when the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This rule provides the court with a useful tool when the critical facts are undisputed, facilitating the resolution of a pending controversy without the expense and delay of conducting a trial made unnecessary by the absence of factual dispute. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir.1982); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Summary judgment is inappropriate, however, where the evidence before the court reveals a genuine factual disagreement requiring submission to a jury. An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* 106 S.Ct. at 2511. However, if the evidence is merely "colorable" or is "not significantly probative", summary judgment may be granted. *Id.* In making its ruling on a summary judgment motion, the court must view all inferences in a light most favorable to the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982), must resolve all doubts against the moving party, *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985), and must take as true all allegations of the non-moving party that conflict with those of the movant, *Anderson, supra*, 106 S.Ct. at 2513.

As the court recently said in *Childers v. Power Line Equipment Rentals, Inc.*, 842 F.2d 689 (3d Cir.1988):

> "Where a party opposing a motion for summary judgment has the burden of persuasion, and the moving party has identified sufficient facts of record to demonstrate that no genuine issue of material fact remains, the nonmoving party is obliged to identify those facts of record which would contradict the facts identified by the movant. *See First Nat'l. Bank of Pa. v. Lincoln Nat'l. Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir.1987) (nonmoving party with burden of persuasion may not rest on mere denials to withstand motion for summary judgment); *Equimark [Commercial Fin. Co. v. C.I.T. Fin. Serv. Corp.]*, 812 F.2d [141] at 144 [3d Cir.1987] (nonmoving party with burden of persuasion must make showing of record evidence sufficient to withstand motion for summary judgment); *see also Celotex [Corp. v. Catrett]*, 477 U.S. [317] at [321–24], 106 S.Ct. [2548] at 2552–53 [91 L.Ed.2d 265 (1986)]; Fed.R.Civ.P. 56(e).

We realize that the rule of law announced here can be interpreted as an extension of *Celotex*. We believe, however, that allowing a nonmoving party opposing a motion for summary judgment to rest on mere denials where there are unidentified facts of record which may contradict the facts identified by the movant would be an unworkable and illogical rule. It would require the district judge to search through an often voluminous written record for facts which might support the nonmovant's claim, and would require this Court to review the district judge's search to insure that no facts were missed. It would permit the party to present facts, and argument based on those facts, to the Court of Appeals where that party had not identified those facts to the district court. We also believe that any other holding would misread the requirement of Rule 56(e) that the nonmoving party 'set forth specific facts showing that there is a genuine issue for trial.' " Fed.R.Civ.P. 56(e).

The facts developed in discovery since this case was filed some two years ago are not disputed and may be summarized as follows. Plaintiff, Leonard Long, is a security officer with the United States Postal Service. On April 25, 1984, while on duty at the Employees' Entrance, Post # 2, at the Post Office at 30th and Market Streets in Philadelphia, plaintiff allegedly was injured when the four-legged "carrier stool" on which he was sitting collapsed underneath him. The stool, according to plaintiff's affidavit, was old and worn looking, and a metal retaining ring normally located inside the legs approximately three-fourths of the way to the bottom of the stool, was missing. According to the allegations of the complaint, this ring had been welded to the legs, and the welds had broken off. There is no allegation or evidence about how old the stool was at the time of the accident, when the retaining ring had broken, or of any markings on the stool which would identify the manufacturer.

Plaintiff understandably did not inspect the stool at the time of his injury. According to plaintiff's affidavit, he did have an opportunity two weeks after the incident to

inspect the stool and determine whether it had any identifying markings. He had returned to the Post Office to pick up his paycheck and the stool was pointed out to him. It was stored in a supervisor's office. There is no evidence that he inspected the stool or attempted to obtain it or preserve it as evidence, although it must also be noted that he did not have counsel at this time. Apparently the stool was subsequently destroyed by the Postal Service as a safety measure. In any event, its whereabouts are unknown and all counsel readily conceded at oral argument that even with extended discovery the stool cannot be located. .

Plaintiff, in his affidavit, says that in the late summer of 1985 he obtained from the Post Office a stool similar to the one in question. This stool bore markings indicating that it had been manufactured by Krueger Metal Prod. in August, 1978. In his affidavit, plaintiff further states that in 1986 he noted a similar stool at the Post Office which bore markings indicating that it had been manufactured by Federal Equip. Co., Carlisle, Pa., no date indicated. Suit was filed against these two defendants in April, 1986.

After suit was filed, plaintiff obtained a letter dated December 8, 1987 from the United States Postal Service Procurement Division which indicates that in the ten year period prior to the accident carrier stools were purchased nationally from four suppliers, one of which is defendant Krueger.[1] Although it was not named in the letter, defendant Cutler admits that stools of this kind were furnished to the United States Government prior to 1975 by its predecessor acting as a local supplier.[2]

To summarize the uncontroverted evidence before me, the plaintiff was allegedly injured by the collapse of a stool, similar to at least five makes of stools used by his employer, the United States Postal Service. There is no evidence of identifying or warning markings on the stool. The stool failed because a critical component, a retaining ring, which had been welded to the stool at the time of manufacture, broke off. There is no allegation that the ring failed suddenly under use, or even any evidence to indicate that it failed prematurely. The stool was well worn and apparently old, although there is no evidence as to its age. Plaintiff had an opportunity to inspect the stool, or to attempt to obtain it or preserve it as evidence, but did not do so. According to plaintiff's affidavit, there were no labels or markings on the stool regarding its use when in damaged condition, i.e., when the retaining ring was missing. Plaintiff's suit is based upon the theory that the stool was defective because the ring failed and because no warning was given not to use the stool if the ring did fail.

Both motions for summary judgment are grounded on the proposition that, since the allegedly defective instrumentality, a four-legged "carrier stool", cannot be identified as having been manufactured by either of these defendants, summary judgment must be granted in their favor. Plaintiff's theory, on the other hand, is that since each of the defendants has been identified as having made for use at the Post Office in Philadelphia a stool of the type which caused the injury, on a theory of alternative liability each of these defendants can be held liable for the injury to plaintiff.

When federal courts sit in diversity cases, they must apply the substantive law of the states where they sit. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When they are required to interpret or apply state law, they must consider and accept the decisions of the state's highest court as the ultimate authority regarding state law. *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 553 (3d Cir.1985); *Connecticut Mutual Life Insurance Co. v. Wyman*, 718 F.2d 63, 65 (3d Cir.1983). When, however, the highest court of the state has not author-

---

1. Other defendants named were: ISC Govt. & Energy; Al's Tool and Die; Scottvale Metal; and Salsbury Industries which provided no stools prior to plaintiff's injury.

2. Affidavit of C. Donald Woodington, Vice President–Finance of Cutler Manufacturing Corporation, formerly known as Cutler–Federal, Inc., dated November 19, 1987.

itatively considered the issue, "our disposition of such cases must be governed by a prediction of how the state's highest court would decide were it confronted with the problem." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 611 (3d Cir.1980), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). *See also Becker v. Interstate Properties*, 569 F.2d 1203, 1205 (3d Cir.1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). In this effort, the federal court must give "proper regard" to the relevant rulings of other courts within the state. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1965). *See also Erie Castings Co. v. Grinding Supply, Inc.*, 736 F.2d 99, 100 (3d Cir.1984); *Wyman*, 718 F.2d at 65.

Generally, under Pennsylvania law, a cause of action for negligence must fail unless defendant's conduct is shown to have been the proximate cause[3] of plaintiff's injury. *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978). In a product liability case, the plaintiff must identify the defendant as the manufacturer or seller of the offending product before a plaintiff's injuries may be found to be proximately caused by the negligence of the defendant. *Cummins v. Firestone Tire and Rubber Company*, 344 Pa.Super. 9, 495 A.2d 963 (1985). "Absent such identification, there can be no allegation of duty, breach of duty or legal causation, and hence there can be no liability." 495 A.2d at 967–68.

The Pennsylvania Superior Court in *Cummins* extended this principle to a cause of action sounding in strict liability. The court held that in order to state a cause of action for strict liability in tort, a plaintiff must allege a sale or other commercial transfer of a product by the defendant he sued. The plaintiff in *Cummins* alleged that he was injured by a tire rim which was defective in design, but could not discover who had manufactured the particular rim in question. He brought suit against a large number of rim manufacturers and other defendants. Because

the plaintiff could not identify the manufacturer of the product that allegedly injured him, he was unable to establish that the defendant made the requisite sale or other commercial transfer of the product. As the Superior Court noted:

> "Thus, [plaintiff] cannot adequately aver the requisite connection between [defendants] and the defective product, and cannot support a cause of action in strict liability."

*Cummins*, 495 A.2d at 968–69; *see also Klein v. Counsel of Chemical Associations*, 587 F.Supp. 213 (E.D.Pa.1984).

Plaintiff attempts to distinguish *Cummins* from the instant case by saying that in *Cummins* the plaintiff was unable to identify the offending product or particular manufacturer because the parts were placed back into the stream of commerce after the incident, while in this case the plaintiff is able to identify the offending product, a carrier stool. In this respect, plaintiff's case is even weaker than that of the plaintiff in *Cummins*. The plaintiff in *Cummins* never had an opportunity to inspect the product in question. In this case, plaintiff admits that he had such opportunity. From plaintiff's affidavit, one could draw the reasonable conclusion that the plaintiff could have obtained or preserved as evidence the very stool that is alleged to have injured him. He did not attempt to do so. Were that stool in evidence, it might be possible to identify its manufacturer. Due to the fault of plaintiff, not of defendants, it is not in evidence and the identification cannot be made.

In spite of the authority of *Cummins*, plaintiff argues that the "alternative liability" exception to the identification rule should apply. This exception is found in Restatement (Second) of Torts § 433B(3). That section says:

> "Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, and there is uncertain-

---

**3.** Pennsylvania courts use the term "substantial factor" as a more understandable substitute for

proximate cause. *Hamil*, 392 A.2d at 1288.

ty as to which one caused it, the burden is upon each such actor to prove that he has not caused the harm."

Comment H to § 433B(3) says:

> "The cases thus far decided in which the rule stated in subsection (3) has been applied all have been cases in which all the actors involved have been joined as the defendants. All of these cases have involved conduct simultaneous in time, or substantially so.... It is possible that cases may arise in which some modifications of the rule stated may be necessary because of complications arising from the fact that one of the actors involved is not or cannot be joined as a defendant.... Since such cases have not arisen, and the situations which might arise are difficult to forecast, no attempt is made to deal with such problems in this Section...."

The seminal case on this issue is *Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1 (1948). In that case, two hunters simultaneously shot in the direction of their hunting companion, the plaintiff, but the plaintiff was unable to identify which defendant actually fired the shot that seriously wounded him. In shifting the burden of proof to the defendants, "each to absolve himself if he can", the court emphasized that both defendants were wrongdoers who had brought about a situation where the negligence of one of them injured the plaintiff. The court reasoned that it would be unfair to deny the injured person redress simply because he could not prove how much damage each did when it was certain that between them they did it all.

Two Pennsylvania cases which deal specifically with Restatement (Second) of Torts § 433B(3) are *Snoparsky v. Baer*, 439 Pa. 140, 266 A.2d 707 (1970), and *Sommers v. Hessler*, 227 Pa. Superior Ct. 41, 323 A.2d 17 (1974). *Snoparsky* involved a minor plaintiff who was struck in the eye by a rock thrown by one of seven or eight boys engaged in a game of stone throwing at a construction site. The plaintiff sued the landowners and contractor, who in turn joined twelve boys as additional defendants. The court relied on § 433B(3) to shift the burden of proof to the additional defendants to exculpate themselves. *Sommers* involved a similar situation. A minor plaintiff lost an eye due to a spit-ball fight on a school bus, and five boys were joined as additional defendants in the action against the bus company. The court followed the *Snoparsky* application of § 433B(3).

*Summers, Snoparsky,* and *Sommers* were not strict liability cases. All three involved assaults in which all known tortfeasors were joined and in which all tortious acts were simultaneous and similar. Plaintiff relies on *Erlich v. Abbott Laboratories, et al.*, 5 Philadelphia County 249 (1981) and argues that it extends the Restatement doctrine of alternate liability to products liability cases and to cases in which not all tortfeasors have been joined. *Erlich* involved a drug used by the plaintiff's mother to prevent a miscarriage while plaintiff was *in utero* and the drug was alleged to have caused plaintiff to develop cancer many years later. There were further allegations that information regarding risks from possible carcinogenic qualities of the drug and allegations of its ineffectiveness for preventing abortions were known but not disclosed by its manufacturers.

The drug was marketed by each manufacturer in the form of similar unmarked pills, so that there was no way a user could determine the source of the drug used. As difficult as it might have been for plaintiff's mother to determine the source of the drug, plaintiff herself was *in utero* at the time the drug was used, and obviously was totally helpless. While not all manufacturers of the drug known to have marketed it in the relevant area were before the court, the manufacturers of ninety (90%) percent of the drug so marketed were in court. The drug was used without any alteration from the way in which it was manufactured; according to the allegation all examples of the drug were equally dangerous. It was used in the dosage and for the purpose recommended by the manufacturer, even though the manufacturers are alleged to have known that it was unsafe in such dosage and ineffective for its intended

use. Based on this background, the judge in *Erlich* elected to apply the Restatement doctrine of alternate liability. *Erlich* is a trial court opinion, not an appellate court opinion, and therefore can only be used by this court to predict how Pennsylvania's highest court would hold when faced with a similar set of facts. The judge in *Erlich*, writing before the decision in *Cummins, supra,* stressed, as the rationale for his extension of the alternate liability exception, the difficulty of identification faced by the plaintiff and the need to deal with the complexities of a highly technical society. Because pills are identical and have a shelf life, we note the more or less simultaneous and similar nature of the tortious acts involved.

In *Cummins,* when it sustained preliminary objections, the Superior Court, in a well-reasoned opinion, rejected arguments that *Sindell v. Abbott Laboratories, et al.,* 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924, *cert. denied,* 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980) should apply and in comparing *Erlich* and *Sindell* stated 495 A.2d at page 972:

"Finally, once again, we are confronted with a cause of action novel to the courts of this Commonwealth. The closest any court has come to adopting reasoning similar to *Sindell* was the Court of Common Pleas of Philadelphia County in *Erlich v. Abbott Laboratories et al.,* 5 Phila. 241 (1981).... Although the *Erlich* court proceeded under a different theory, the factors relied upon by that court were very similar to those deemed to be pivotal by the court in *Sindell.* First, plaintiff was unable to identify the manufacturer of the offending product through no fault of her own. Second, she had joined those manufacturers who marketed approximately 90% of the DES in the Philadelphia area. Third, she alleged that all defendants were tortfeasors by placing an allegedly defective product on the market. Finally, she averred that the products were identical and shared the same defective qualities. The same shortcomings which distinguish this case from *Sindell* serve to differentiate it from *Erlich.* Therefore, *Erlich* does not militate against our decision not to follow either market share liability or alternative liability with respect to the case at bar."

In the case before me, I am not faced with a highly complex chemical product such as a drug with no means of identification. I am dealing with a broken stool which, if it was basically like one of the stools described in the plaintiff's affidavit, bore the name of its manufacturer. The stool allegedly collapsed because it was defective, which would make it different from the non-defective stools of other manufacturers. Without the alleged defect in the stool, there would be no need for a warning concerning its use when broken. Plaintiff has not pointed to any facts which establish that all manufacturers' stools were similarly defective and in need of warnings. Here only one defendant acted tortiously, unlike the cases involving missiles or defective pills in which there is evidence that everyone acted tortiously in a simultaneous and similar manner.

Instead of a product used in the condition it left its manufacturer, I am dealing with a stool worn out through hard use. Unlike the plaintiff in *Erlich* who was *in utero* when the harmful product was used, the plaintiff here is, and was at the time of his injury, a security officer who had an adequate opportunity to inspect the broken stool and to attempt to preserve it as evidence. Instead of having before me the manufacturers of ninety percent of the harmful substance, I am dealing with only two out of at least five possible tortfeasors. Furthermore, since local supply of stools was an option, in addition to those suppliers listed in the Post Office letter, there are many possible tortfeasors in addition to the two plaintiff chose to sue. The stool could have been manufactured at any point in a wide expanse of time. Even if the list of potential defendants is restricted to those found to have stools in the Post Office, a factfinder could hold one of the present defendants liable only on the basis of a guess or speculation. Extensive discovery time has not cured this problem, and plaintiff readily concedes that even if I

gave additional time, the stool cannot be found.

I cannot in good conscience extend the doctrine of alternate liability to a case where substantially less than all possible tortfeasors are before the court, where all their conduct is not similar, and where the plaintiff had adequate opportunity to inspect and preserve as evidence the allegedly defective object and failed to do so. For the reasons given above, I find that the crucial factual issue on this motion, the identity of the manufacturer of the stool, must, as a matter of law, be resolved in favor of defendants Krueger and Cutler. Consequently, I am constrained to grant summary judgment in their favor against the plaintiff. Having done so, I must similarly grant summary judgment on the cross-claims between these defendants.