Charles D. CHELTON, Plaintiff,

v.

KEYSTONE OILFIELD SUPPLY COMPANY, INC. and UGI Development Company, Defendants,

v.

BARON MANUFACTURING COMPANY and Henssgen Hardware Corp., Henssgen G.m.b.H. a/k/a Henssgen Karabinerhaken G.m.b.H. and Mittelman and Company, Third–Party Defendants.

Civ. A. No. 87–189E.

United States District Court, W.D. Pennsylvania.

April 24, 1991.

Michael E. Dunlavey, Dunlavey, Nichols, Ward & Krill, Erie, Pa., for Charles D. Chelton.

Terry C. Cavanaugh, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for Henssgen G.m.b.H.

Mark E. Mioduszewski, Knox, Graham, McLaughlin, Gornall & Sennett, Erie, Pa., for Keystone Oilfield Supply, Inc. and UGI Development Co.

Gail Gratton, Rose Schmidt Hasley & DiSalle, Pittsburgh, Pa., for Henssgen Hardware Corp.

David Presser, Gorr Dell and Loughney, Pittsburgh, Pa., for Baron Mfg. Co.

## OPINION

COHILL, Chief Judge.

Presently before the Court are several motions for summary judgment. Every party, except the plaintiff, has moved for summary judgment against every other party. These motions are the culmination of months of discovery disputes and motions for sanctions.

Specifically, the tedious and tortured path of this case has now led to the following motions:

1) Defendants/third-party plaintiffs' Motions for Summary Judgment Against all three third-party defendants;

2) Defendants' Motion for Summary Judgment against the plaintiff;

3) Third-party defendant Baron Manufacturing Company's Motion for Summary Judgment (presumably against the defendant/third-party plaintiff though that is not specifically stated anywhere in the motions or briefs);

4) Third-party defendant Baron Manufacturing Company's Motion for Summary Judgment against third-party defendants Mittelman & Company and Henssgen Karabinerhaken G.m.b.H.;

5) Third-party defendants' Mittlemann & Co. and Henssgen Karabinerhaken G.m.b.H. Motion for Summary Judgment against defendants/third-party plaintiffs;

6) Third-party defendant Henssgen Hardware Corporation's Motion for Summary Judgment against defendants/third-party plaintiffs.

Given that all these motions arise out of the same incident we will dispose of them in one opinion.

*Facts*

On August 8, 1985, Mr. Charles D. Chelton was working on an oil rig located in Northwestern Pennsylvania, specifically Rig # 6. He fell from that rig when the snap hook holding him to the climber's assist cable broke. Mr. Chelton suffered serious injuries from the fall. Mr. Chelton

then sued his employer's parent company and his employer's wholly owned subsidiary for providing him with a defective snap hook. The complaint contains three causes of action. The first cause of action is negligence, the second is strict product liability and the third is breach of warranty.

The parent company named as the defendant in this action is UGI Development Company ("UGI"). At the time of the accident Mr. Chelton was employed by International Petroleum Services Company ("IP-SCO"), a wholly owned subsidiary of UGI. IPSCO also has a wholly owned subsidiary named Keystone Oilfield Supply Company ("KOSCO") which Mr. Chelton also named as the defendant in his suit.

IPSCO drills oil and gas on property owned or leased by its customers. KOSCO sells oilfield drilling supplies to drillers. The plaintiff has presented evidence that, in the early 1980's, IPSCO instigated a policy that IPSCO would purchase all supplies from KOSCO. As a result, Mr. Chelton named KOSCO as a defendant as well.

Both KOSCO and UGI are defendants because the plaintiff contends they supplied him with the defective hook. The sellers of a defective product could be liable to the plaintiff under any of the three theories of liability in the complaint.

KOSCO/UGI subsequently filed cross claims against Henssgen Hardware Corporation ("HHC") and Baron Manufacturing Company ("Baron"), supposedly the only distributors of this type of snap hook in the United States. After further investigation, KOSCO also joined Mittelman & Company ("Mittelman"), the alleged manufacturer of the snap hook, and its wholly owned subsidiary, Henssgen Karabinerhaken G.m.b.H. ("HK").

HK is the sales arm of Mittelman, responsible for marketing Mittelman's products. HHC is the wholly owned subsidiary of HK. HHC, the permanent distribution center for HK in the United States, was created by HK to be the exclusive importer of Mittelman products into the United States. However, HK could still market and import Mittelman products into the United States provided that HHC received an 8% commission on all HK sales within the United States.

Neither HHC, HK or Baron sell products directly to oilfield supply companies like KOSCO. Generally, these companies are wholesalers which sell the products to hardware stores and discount stores where they are purchased by consumers.

KOSCO/UGI filed cross claims against these companies seeking contribution or indemnity for any judgment entered against KOSCO/UGI for the plaintiff's injuries. The basis for these cross claims is that the manufacturers and distributors of a defective product share liability with the seller for any injuries resulting from the defect.

However, months of discovery failed to uncover a paper trail documenting this snap hook's journey from the factory to oil rig # 6. Thus, no one knows quite yet exactly who sold, manufactured or distributed this particular snap hook.

The plaintiff has provided two affidavits that were subsequently corroborated by deposition stating that KOSCO sold the snap hook to IPSCO. Both HHC and Baron maintain that since there is no evidence to positively prove that either of them sold the snap hook, they should be dismissed as parties to this law suit. Mittelman and HK dispute whether the snap hook in question was actually manufactured by Mittelman. Given that the facts questioned above are central to the motions of the individual parties, the details of these disputes will be discussed in conjunction with the relevant motion.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c) requires a grant of summary judgment when the moving party has shown "that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." The United States Supreme Court has said that no genuine issue for trial exists when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d

538 (1986). A genuine issue of fact exists if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Given this relatively strict standard, we find that there are several genuine issues of material fact in this case. The most important factual issue is who sold and manufactured the snap hook. All the third-party defendants argue that because none of the discovery in this case has uncovered any air tight evidence that any one of them sold or manufactured the snap hook, there are no genuine issues of material fact and they should be dismissed from the law suit. We interpret this lack of conclusive evidence quite differently.

If there is no conclusive proof that one party sold, manufactured or distributed the product, but the plaintiff has presented credible evidence to suggest that any of the defendants in the suit could be liable, then a genuine issue of material fact exists. The evidence presented by both the plaintiff and the defendants is more than colorable and a rational trier of fact could find in favor of the plaintiff. However, none of the parties, plaintiff, defendants or third party defendants have provided any conclusive proof of liability or the lack thereof. Thus, we will deny all the summary judgment motions now before this court, leaving the question of who manufactured, sold and/or distributed the snap hook to the jury.

*KOSCO/UGI*

■ We hold that the plaintiff has presented enough evidence to withstand KOSCO/UGI's motion for summary judgment against the plaintiff. To survive this summary judgment motion, the plaintiff must point to some evidence in the record which refutes KOSCO/UGI's factual claims. *Childers v. Joseph*, 842 F.2d 689, 694–695 (3d Cir.1988).

The plaintiff presented two affidavits of the individuals responsible for ordering supplies for IPSCO rig # 6 in 1985, Scott Strand and Barry Johnston. In their subsequent depositions, these individuals both testified that they received instructions from IPSCO to purchase their supplies from KOSCO. Mr. Johnston even remembered that particular snap hook arriving in an order delivered to them by KOSCO. Johnston Dep. at 58—68. If a jury found these individuals credible, they could easily find that KOSCO sold IPSCO the snap hook. Thus, the plaintiff has presented significantly probative evidence to refute KOSCO's claim that it did not supply the snap hook to IPSCO.

*Mittelman*

■ Mittelman argues that there is no evidence connecting it with the snap hook at issue in this case. The third-party defendant argues that no one can positively identify the snap hook as being a Mittelman product. Thus, Mittelman maintains that it should be dismissed from this suit, essentially alleging that the lack of evidence resolves all the factual issues in its favor. While we realize that identification of the snap hook is difficult, we also feel that these factual questions alone are enough to survive any motion for summary judgment.

The hook in question is not intact. The top half of the hook has disappeared. All that remains is the eye and part of the hook. There are no identifying marks on the remnant except the word "Germany." There are only two German manufacturers of snap hooks, Mittelman and Gerbruder Batz G.m.b.H. ("Batz"). Batz marks its hooks with "W. Germany" and Mittelman simply uses "Germany." Batz does not make any die cast zinc alloy hooks with dimensions similar to the hook in question. Record in Support of Defendants/Third Party Plaintiffs' Motions for Summary Judgment at 269.

However, the dimensions of the hook, its composition (die cast zinc alloy) and even the word "Germany" closely correspond with the Mittelman's model 126–120 snap hook (HK's model # 249–5). *See,* Record at 206. Thus, while there is no conclusive proof that Mittelman manufactured the snap hook, there is enough evidence to raise a significant question of fact for a jury to decide at trial. This evidence, while not conclusive, is "significantly probative"

of the issue of who manufactured the hook. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). With this information, the third-party plaintiff has provided enough probative evidence to survive this third-party defendant's motion for summary judgment. We also find this evidence sufficient to support denial of Mittelman's Motion for Summary Judgment against KOSCO/UGI.

*Baron, HHC and HK*

■ The potential liability of the third party defendant distributors is a more difficult and subtle dilemma. During the relevant time period, 1983–1985, Mittleman produced 18,776 model 126–120 snap hooks. Mittelman sold 18,384 of these hooks to HK and the remaining 394 to HHC. Thus, all of the model 126–120 snap hooks made by Mittelman were sold to either HK or HHC. However, only 2,394 of the total number of 126–120 hooks were exported to the United States. HK sold 2000 of these imported snap hooks to Baron. HHC sold all of its 394 hooks to various clients in the United States. Record at 345—346. Thus, KOSCO/UGI joined all the possible importers and distributors of Mittelman 126–120 snap hooks in the United States through its third-party complaint.

HHC disputes this conclusion, pointing to one statement in a deposition given by Ronald Shaw. Mr. Shaw, an officer of HHC, stated that other companies purchased snap hooks from Mittelman or HK. However, there is no evidence on the record, aside from this one statement, that these companies purchased Mittelman model 126–120 snap hooks between 1983 and 1985. Thus, we feel that there is sufficient evidence on the record to support the conclusion that KOSCO/UGI has joined all the primary distributors of Mittelman 126–120 snap hooks over the relevant time span.

Liability would only attach to these distributors if the jury decided that the hook was manufactured by Mittelman and was distributed in the United States through Mittelman's normal distribution channels. At that point, liability would attach under strict liability, and possibly negligence, because all those who participated in the commercial transfer of the product are liable. *See,* Restatement (Second) of Torts § 402A; *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). However, the question remains whether the third party plaintiffs must specifically identify the company that actually distributed the defective snap hook.

Because this case is before us through diversity jurisdiction we must apply the substantive law of the state of Pennsylvania. *Erie Railroad Comp. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, the Pennsylvania Supreme Court has not decided this issue. Thus, we must predict how Pennsylvania's highest court would decide this case. *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657 (3d Cir.1980), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

Baron, HK and HHC argue that Pennsylvania law requires that the plaintiff (or third-party plaintiff) be able to specifically identify the manufacturer, distributor or retailer that dealt with the specific defective product. All three parties cite the same cases. The earliest of these cases is *Cummins v. Firestone Tire & Rubber Co.,* 344 Pa.Super. 9, 495 A.2d 963 (1985). *Cummins* involved an individual who was injured when a tire and rim assembly exploded while being inflated. The tire and rim assembly was lost before the plaintiff could examine it to determine the manufacturer. Thus, the plaintiff sued all manufacturers of similar tire and rim assemblies. The plaintiff could not identify the particular part in the rim assembly that was defective let alone the manufacturer or distributor of the tire and rim assembly. Thus, the court held that liability could not attach under negligence or strict liability.

The *Cummins* court also declined to apply the market share or alternate liability theories to the strict liability claim before it. Market share liability holds defendant manufacturers liable for defective products even though the plaintiff cannot identify the manufacturer of the specific product that she used. Under that theory, all manufacturers joined in the suit are liable to the plaintiff in proportion to their market

share at the time the product was sold. *See, Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924, cert. denied, 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980).

Alternate liability means that, where the plaintiff cannot identify the individual tortfeasor that caused his injury, the burden shifts to the defendants to exculpate themselves. The classic example of this theory is *Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1 (1948). In *Summers,* two hunters simultaneously fired shots in the direction of another hunter. The third hunter was injured by a shotgun pellet from one of the defendants' guns but could not identify which gun had discharged the pellet. The court ruled that both defendants were negligent, thus, the burden shifted to the defendants to discover which hunter had actually shot the pellet in order to exculpate themselves.

While Pennsylvania courts have applied this theory in the past they have not decisively applied it in strict liability cases. *See, Snoparsky v. Baer,* 439 Pa. 140, 266 A.2d 707 (1970); *Sommers v. Hessler,* 227 Pa.Super. 41, 323 A.2d 17 (1974). Recognizing this state of the law, the *Cummins* court stated that it declined to apply "either market share liability or alternative liability with respect to the case at bar." *Cummins,* 344 Pa.Super. at 27, 495 A.2d at 972.

Subsequently, the United States District Court for the Eastern District of Pennsylvania used *Cummins* to predict that the Pennsylvania Supreme Court would not apply the alternate liability theory to strict liability actions. In *Long v. Krueger, Inc.,* 686 F.Supp. 514 (E.D.Pa.1988), the court held that where the plaintiff could not identify the manufacturer of an allegedly defective stool because the stool was no longer available, that the alternate liability theory did not apply. The court also held that *Cummins* required a plaintiff to specifically identify the manufacturer or seller of the product in order to recover under strict liability or negligence. *Id.* at 517.

At least one other Pennsylvania court has held that the manufacturer or supplier of the product must be identified by the plaintiff. *Eckenrod v. GAF Corp.,* 375 Pa.Super. 187, 544 A.2d 50 (1988). *Eckenrod* is an asbestos case, thus the majority of the court's opinion dealt with proof of the ingestion of the asbestos fibers. However, at the beginning of its analysis the court did state that "for liability to attach in a products liability action, plaintiff must establish that the injuries were caused by a product of the particular manufacturer or supplier." *Id.* at 190–191, 544 A.2d at 52.

Thus, three separate courts have interpreted Pennsylvania law as requiring specific identification of the manufacturer or supplier of the defective product. However, none of these courts faced a situation similar to the instant case. In *Cummins,* the plaintiff could not identify the part in the assembly that was defective let alone the manufacturer of the part. As a result, the plaintiff sued all possible manufacturers or suppliers of all similar tire and rim assemblies. In addition, the defective assembly itself was not available.

*Long* involved a broken postal carrier stool. The plaintiff made no attempt to preserve the stool, and it was destroyed by the postal service for safety reasons. The plaintiff in turn sued all suppliers of stools to the postal service in the area over several years. Thus, both *Long* and *Cummins* involve a plaintiff taking a "shotgun" approach to products liability. The theory being that if you cannot identify the manufacturer, sue all possible manufacturers, in hope that one will be the liable manufacturer.

These cases are qualitatively different from the case at hand. The plaintiff, Mr. Chelton, sued only the company most likely to have supplied him with the hook KOSCO/UGI. KOSCO/UGI, in turn, only joined the manufacturer most likely to have made the hook and that manufacturer's distributors. Thus, this case is quite tailored. The plaintiff and the third-party plaintiffs did not sue all manufacturers of snap hooks and all their distributors. These parties only sued the most likely manufacturer and its distributors after a

reasonable and diligent investigation of the accident.

The third party plaintiff is unable to identify the specific distributor of the hook through no fault of its own. These companies have presented significantly probative evidence that Mittelman manufactured the hook. However, they do not have any information, after diligent investigation, as to which of Mittelman's distributors sold this particular hook. Thus, a question of fact remains for the jury to decide at trial. To facilitate the resolution of this question at trial, we feel that this is an appropriate case to shift the burden to the third party defendants to prove which of the distributors sold this particular hook.

We do not feel that this result is contrary to the Pennsylvania Superior Court ruling in *Cummins*. The *Cummins* court distinguished its ruling from a trial court ruling that applied alternate liability to a "DES" (diethylstilibestrol) strict product liability case. *See, Erlich v. Abbott Laboratories*, 5 Phila. 249 (1981). The *Cummins* court mentioned certain "pivotal" factors which differentiated its case from cases where market share liability or alternate liability were appropriate.

> First, the plaintiff was unable to identify the manufacturer of the offending product through no fault of her own. Second, she had joined those manufacturers who marketed approximately 90% of the DES in the Philadelphia area. Third, she alleged that all defendants were tortfeasors by placing an allegedly defective product on the market. Finally, she averred that the products were identical and shared the same defective qualities. *Cummins*, 344 Pa.Super. at 27, 495 A.2d at 972.

The instant case satisfies those pivotal factors. First, after months of discovery, the third-party plaintiffs have not uncovered any paper trail identifying the supplier of the hook. However, we do not believe that this means that no paper trail could be found. Any information relating to the sales of these products would be in the files of the third party defendant distributors. While these third party defendants have been reasonably cooperative and produced much information to aid the third-party plaintiff, we believe that if the burden of uncovering this hook's route from Germany to rig #6 is placed on the distributors the path will become substantially clearer.

Second, the third party plaintiff has joined all potential distributors of this hook. If the *Cummins* court was satisfied with having 90% of the liable parties in the suit, 100% of the potential distributors should certainly be sufficient.

Because the plaintiff has alleged a design defect in this hook, all these distributors could be tortfeasors. Complaint ¶ 20. The tort occurs when they participate in the commercial transfer of a defective product. *See, Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). If the jury determines that this hook is a Mittelman product and its design is defective, then all these defendants participated in the commercial transfer of a defective product. However, if the jury determines that the design was not defective but the individual hook was, shifting the burden to the distributors should facilitate determining which company sold this particular hook.

We must emphasize that this decision should not be read to apply universally the theory of alternate liability in strict liability cases. This is a unique case. The third party plaintiff has presented substantial evidence to suggest that a single manufacturer produced the product in question. However, the third party plaintiff has not been able to determine which of this manufacturer's distributors sold the product. Thus, there are a limited number of potentially liable parties which would owe the defendant indemnity or contribution and only if the jury finds that Mittlemann produced the product.

This is not a case where the plaintiff has made no effort to determine which manufacturer created the product and sued all possible manufacturers. Nor is this a case where it would be impossible to determine which party is liable. A substantial factual question remains as to which third-party defendant sold this snap hook. This case

simply shifts the burden of proving which party sold the hook to the companies which have the information readily at hand. Thus, we will deny third party defendants Baron, HK and HHC's motions for summary judgment against the third party plaintiffs.

Additionally, we will deny Baron's motion for summary judgment against Mittelman and HK. Given the substantial factual questions remaining in this case, we find it would be improper to dismiss Baron's claim for indemnity against Mittelman and HK.