Delma R. LAYTON and Roy E. Layton

v.

BLUE GIANT EQUIPMENT COMPANY
OF CANADA, LTD., et al.

Civ. A. No. 83–3363.

United States District Court,
E.D. Pennsylvania.

Oct. 18, 1984.

Soren P. West, Lancaster, Pa., for plain-tiffs.

Austin Hogan, Philadelphia, Pa., for Blue Giant.

Christopher S. Underhill, Lancaster, Pa., for Equip. Co.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff in this products liability case alleges that she was injured at work. She claims that she was involved in using a lift-jack manufactured by defendant Blue Giant Equipment Company of Canada ("Blue Giant")[1] and was stopped at the intersection of two aisles in her employer's warehouse when her lift-jack was struck from the rear by another lift-jack operated by a fellow employee. As a result of this accident, plaintiff's foot was trapped be-neath the wheels of her lift-jack and she suffered serious injury.

Plaintiff alleges that her injury was caused by the lack of brakes (both stopping and parking) on the lift-jacks involved in the accident. She has sued the manufac-turer of the lift-jack she was using as well as the manufacturers of all other lift-jacks in use at her employer's warehouse. Ap-parently, the identity of the manufacturer of the second lift-jack cannot be deter-mined. Plaintiff is relying on an expanded theory of alternative liability and argues that the manufacturers should have the

---

1. Plaintiff has sued Blue Giant Equipment Com-pany of Canada, Ltd. Apparently, the lift-jack she was operating was manufactured by Blue Giant Equipment New York, a wholly owned subsidiary of the Canadian firm. Plaintiff has filed a motion to amend her complaint to substi-tute the New York firm as defendant. On July 11, 1984, I denied plaintiff's motion without prejudice because she had not filed a memoran-dum of law along with her motion as required by Local Rule of Civil Procedure 20(c). As of this date plaintiff has not filed a renewed mo-tion and memorandum. I do not consider the potentially pending motion to be a relevant fac-tor in my decision regarding the summary judg-ment motions of the other defendants.

burden of proving that their product was not responsible for her injuries.

The theory of alternative liability was first developed in *Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1 (1948). That case involved an injury caused by a gunshot wound. The wound could have been caused by either of two hunters, but not both. The plaintiff was unable to identify which of the two had fired the shot which injured him. The court recognized the hardship imposed by the traditional doctrine of tort law that requires the plaintiff to prove the identity of the tortfeasor, and shifted to the defendants a burden of exculpating themselves. This decision was premised on a number of grounds. First, the desire to ensure that the mere nature of the tortious conduct would not bar plaintiff's recovery. 199 P.2d at 3–4. Second, the fact that both of the defendants were negligent. *Id.* Third, the fact that all of the potential tortfeasors were present in the court. Finally, the court recognized that the defendants were in a much better position than the plaintiff to offer evidence regarding which of them fired the injurious shot. *Id.* Pennsylvania adopted this theory in *Snoparsky v. Baer*, 439 Pa. 140, 266 A.2d 707 (1970) in a case factually similar to *Summers*.

Defendants argue that Pennsylvania courts have never applied a *Summers*-like approach outside of a case involving an intentional tort.[2] Such is not the case. In *Ehrlich v. Abbot Laboratories*, 5 Phila. 249 (C.P.Phila.1981), the court did, in fact, apply a *Summers*-type of analysis to a products liability case.

In *Ehrlich*, plaintiff alleged that she had been injured as a result of her mother's ingestion of the drug Diethylstilbestrol ("DES") during the time she was pregnant with plaintiff. Due to a number of factors, plaintiff was unable to identify the manufacturer of the pills her mother had actually taken and instead sued ninety-four drug companies (allegedly all those that manufactured and distributed DES). In denying defendant's motion for summary judgment, the court held that the burden of proof on identification of the manufacturer of the pills involved should shift to the defendants.

The court's decision was based on the presence of four factors. First, the plaintiff could not identify the manufacturer of the pills involved and this failure was through no fault of her own. *Id.* at 265. Second, manufacturers of substantially all of the pills which could have caused the injury were joined as defendants. *Id.* at 266. Third, plaintiff alleged that all the defendants were tortfeasors in that all of them had placed the defective drug into the stream of commerce at one time or another. *Id.* at 267. Finally the court relied on the fact that all of the defendants' products were essentially similar or identical in that all of them were defective in the same way. *Id.*

*Ehrlich* represents the furthest extension of *Summers* in Pennsylvania law. Plaintiff argues that the instant case should be controlled by it. For the reasons set forth below I decline to follow *Ehrlich* given the facts and allegations of the present case.[3]

As the *Ehrlich* court recognized, the application of *Summers* in a products liability case was a large step. *Id.* at 268. The facts of that case, however, presented a far more compelling set of circumstances for the extension of the doctrine of alternative liability than do the facts of the instant

2. Defendants have placed considerable reliance on the fact that California courts have not applied *Summers* in a products liability context. Assuming, *arguendo*, that the case cited by defendant *Garcia v. Joseph Vince Co.*, 84 Cal. App.3d 868, 148 Cal.Rptr. 843 (1978), does in fact decline to extend the doctrine to a products liability case indistinguishable from the present case, I find no need to follow the law of California in this suit.

3. I recognize that there is an argument to be made regarding the precedential value to be accorded a decision of a state trial court. I have examined *Ehrlich* and found the opinion to be well reasoned and persuasive. I find no reason to not consider it as a correct statement of the law in this area in Pennsylvania.

case. The *Ehrlich* court found four facts present in that lawsuit to be persuasive arguments in favor of extending *Summers*. An analysis of the same factors in this case reveals that they are not present in this lawsuit to the same degree as they were in *Ehrlich*.

Most importantly, it is not apparent that plaintiff could not identify the manufacturer of the lift-jack that rammed hers through the exercise of reasonable diligence. Plaintiff was at the scene of the accident. She worked there on a daily basis. The plaintiff in *Ehrlich*, by contrast, had been harmed by drugs taken by her mother decades ago. *Id.* at 265. Moreover, the marketing techniques employed by the defendants in that case made identification of the manufacturer of the pills difficult, if not impossible, even for the woman who originally took them. *Id.* The lift-jacks by contrast could have easily been identified by direct examination or through investigation with plaintiff's employer.

In the instant case, plaintiff could have identified the lift-jack that had struck hers by simply looking over or asking someone which one it was. To accept plaintiff's argument that she should not be held to such a minimal level of diligence goes too far. To follow this line of reasoning, plaintiffs should be allowed to proceed on a *Summers* theory against all the drivers in a jurisdiction for a hit and run car accident, or even for a car accident where they simply neglected to identify the driver of the car at the time of the accident. Obviously, such an extension of *Summers* would make it an exception swallowing the general rule that plaintiffs must prove the identity of an alleged tortfeasor.

Further, it is not clear that all of the defendants' lift-jacks in the present case are so similar as to bring this case within

*Ehrlich*. Presumably, not all of these machines are identical. There may also be issues arising from subsequent modifications made to the lift-jacks after plaintiff's employer bought them.

For these reasons,[4] under the facts of this case as they have been pleaded, I decline to follow *Ehrlich*[5]. Motions for summary judgment filed by defendants Stokvis Multiton Corporation, Equipment Corporation of America, Lift Parts Equipment Manufacturing Company and third-party defendant Anderson-Clayton and Company will therefore be granted. An appropriate order follows.

---

**4.** Third-party defendant Anderson-Clayton and Company also argue that plaintiff's theory is fatally flawed because she has not sued all of the manufacturers of lift-jacks represented at the plaintiff's job site. I do not assume that this statement of law is correct. *See Ehrlich* at 260–63. I find that other aspects of this case require that summary judgment be granted.

**5.** Defendants have placed considerable reliance on Judge Shapiro's decision in *Klein v. Council of Chemical Associations, et al.,* 587 F.Supp. 213 (1984). That case involved facts that are very different from the present case. I therefore do not consider it to be controlling here.