Peggy **POOLE, etc., et al., Plaintiffs,**

v.

**ALPHA THERAPEUTIC CORPORATION, etc., et al., Defendants.**

**No. 86 C 7623.**

United States District Court, N.D. Illinois, E.D.

Sept. 14, 1988.

Debra A. Thomas, Leonard M. Ring, Leonard M. Ring and Associates, Chicago, Ill., for plaintiffs.

John D. Kuhn, Brinton & Bollinger, Chicago, Ill., for Alpha Therapeutic Corp.

Pamela L. Gellen, Nancy T. O'Shaughnessy, Johnson, Cusack & Bell, Ltd., for Miles Laboratories, Inc.

Douglas F. Fuson, Alan B. Silverberg, Sidley & Austin, Chicago, Ill., for Armour Pharmaceutical Co.

Charles C. Albert, John P. Scotellaro, Bell Boyd & Lloyd, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiffs move to add counts IX and X to their third amended complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Both counts seek to hold all defendants liable under various theories of liability for manufacturing, processing, marketing and distributing a blood product which caused the death of Stephen Poole. For the reasons stated herein we reject plaintiffs' proposed market share and concerted action theories but grant them leave to amend to include allegations setting forth a theory of alternative liability modeled after *Summers v. Tice*, 33 Cal.2d 80, 86, 199 P.2d 1, 4 (1948).

## FACTS

Accepting the truth of all of plaintiff's well-pleaded allegations, from 1975 until 1987, Stephen Poole, a hemophiliac, purchased and internally injected an antihemophilic factor known as factor VIII. The named defendants comprise the complete market of manufacturers, processors, marketers and distributors from which Poole purchased factor VIII over his lifetime (cplt. ¶ 18). According to the complaint, as the result of defendants' solicitation of blood donors from a high risk segment of the population, their failure to perform screening and heat-treating tests and their failure to warn decedent of factor VIII risks, Poole contracted Acquired Immune Deficiency Syndrome (AIDS) and died on July 10, 1987.

Plaintiffs specifically labeled counts IX and X "Market Share Liability" claims. In these counts plaintiffs assert that from 1982 to 1985 defendants solicited donors known to have a high risk of contracting AIDS without informing Poole of this risk, and that they marketed improperly-treated factor VIII products, despite the fact that they knew that these products could lead to the contraction of AIDS. Plaintiffs further assert that while they have identified all those defendants from whom decedent purchased factor VIII, they "cannot identify with certainty the manufacturer or manufacturers that marketed [the] Antihemophilic Factor responsible for the AIDS virus transmitted to Stephen Poole" (cplt. ¶ 19). The proposed counts seek damages based on the respective market share of each defendant and assert theories of liability that would allocate the burden of proof in such a way that each defendant would be required to show that its product did not cause Poole's death.

## DISCUSSION

### I. Leave to Amend

The grant or denial of leave to amend pursuant to Rule 15(a) is within this

court's sound discretion. *First Wisconsin Financial Corp. v. Yamaguchi*, 812 F.2d 370, 373 (7th Cir.1987); *Goulding v. Feinglass*, 811 F.2d 1099, 1103 (7th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987). The Supreme Court has stated that leave to amend should be "freely given" in "the absence of any apparent or declared reason—such as ... futility of amendment." *Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962). In this circuit, "where the proposed amendment fails to allege facts which would support a valid theory of liability ... or where the party [seeking] to amend has not shown that the proposed amendment has substantial merit", leave to amend is properly denied. *Goulding*, 811 F.2d at 1104 (citation omitted) (quoting *Verhein v. South Bend Lathe*, 598 F.2d 1061, 1063 (7th Cir.1979)). With these standards in mind, we consider the three theories of liability underlying plaintiffs' proposed amendments.

## II. Theories of Liability

While plaintiffs have labeled their proposed counts "Market Share Liability" claims, we look to the substance of the allegations themselves to determine whether they support valid theories of liability.

### A. *Market Share*

■ The concept of market share liability was first developed by the California Supreme Court in *Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 607 P.2d 924, 163 Cal.Rptr. 132, *cert. denied*, 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980), to address the unique causation problems raised by diethylstilbestrol (DES) litigation. In *Sindell*, the plaintiff alleged that she was injured by DES which her mother ingested while she was pregnant with the plaintiff. The plaintiff brought an action naming several drug manufacturers and alleging that they had produced DES pursuant to an agreed-upon formula. Her claims sounded in negligence, strict liability, violation of express and implied warranties and false and fraudulent representations. The court acknowledged the general rule that a plaintiff bears the burden of

establishing that the damages suffered were caused by the defendant. It modified the rule because the plaintiff was unable to identify the manufacturer responsible for making the DES taken by her mother while she was *in utero*. Specifically, the *Sindell* court determined that if the plaintiff joined in the litigation the manufacturers of a substantial share of the DES that her mother might have taken, the burden of proof would shift to the defendants to demonstrate that they could not have supplied the DES which caused her injuries. The court ruled further that each defendant failing to make such a showing would be held liable for the proportion of the judgment represented by its share of the drug market.

In Illinois, the market share theory of liability has met with limited success. Only one appellate court has adopted the theory, and in its discussion was careful to confine the theory's application to the unique circumstances presented by the DES case before it. In *Smith v. Eli Lilly*, 173 Ill.App. 3d 1, 24, 527 N.E.2d 333, 348, 122 Ill.Dec. 835, 850 (1st Dist.1988), the Court rested its endorsement of the theory on its conclusion that "[t]he fundamental premise of the market share theory is that the plaintiff lacks sufficient identification information to make out a cause of action under traditional standards of tort liability." *Smith*, at 22, 527 N.E. 2d at 346, 122 Ill.Dec. at 848. The court attributed the absence of such information in part to the uniform marketing methods used by drug companies to promote and distribute DES. *Id.* In another recent Illinois case brought for damages caused by asbestos, the same appellate court rejected the market share theory as inapplicable "where the plaintiff has offered evidence that the identified defendant's product is the cause of his injury." *Lipke v. Celotex Corp.*, 153 Ill.App.3d 498, 509, 505 N.E.2d 1213, 1220, 106 Ill.Dec. 422, 429 (1st Dist. 1987) (citing *In re Related Asbestos Cases*, 543 F.Supp. 1152 (N.D.Cal.1982)).

In short, only one Illinois court has applied the theory of liability which plaintiffs urge upon us today. The court that did so

explained that its holding was limited to the DES action before it and recounted factors making DES litigation unique. *Smith*, 173 Ill.App.3d at 24, 527 N.E.2d at 348, 122 Ill.Dec. at 850. As plaintiffs' action involves factor VIII and AIDS, not DES, we find *Smith* of limited relevance here. Further, here, as in *Lipke*, the other Illinois case arguably recognizing the market share approach to liability, plaintiffs have identified all those defendants responsible for Poole's injury. Thus, even if we recognized the market share theory here, under *Lipke*, since plaintiffs have identified all defendants, the theory would not apply. *See also Brown v. Superior Court*, 44 Cal.3d 1049, 751 P.2d 470, 486, 245 Cal. Rptr. 412 (1985) (author of *Sindell* describing plaintiff's inability to identify DES manufacturers as the primary rationale for *Sindell's* adoption of market share liability). As a federal court, we refuse to expand Illinois tort law in new ways where there is no indication that the state courts would do the same. We find broad application of the market share liability theory particularly inappropriate here since the only precedent supporting the theory has been explicitly limited,[1] and since, if we were to allow plaintiffs to proceed, under Illinois law the theory would be found inapplicable. We thus decline to adopt the market share theory of liability here.[2]

### B. *Concerted Action*

■ Under their concerted action theory plaintiffs must show that a tacit agreement existed among defendants to perform a tortious act. Illinois has adopted the approach set forth in the Restatement of Torts for determining whether defendants have engaged in concerted action. *See*

*Wolf v. Liberis*, 153 Ill.App.3d 488, 496, 505 N.E.2d 1202, 1208, 106 Ill.Dec. 411, 417 (1st Dist.1987). The Restatement provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (1979) (hereafter Restatement). Plaintiffs here have failed to allege that the named defendants pursued a common plan or tacitly agreed to commit the tortious acts about which they complain. Instead, plaintiffs assert that defendants committed parallel tortious acts, which they specifically describe as "identical negligent conduct" (cplt. ¶ 16). Not only is the complaint wholly devoid of the assertions necessary to sustain a concerted action claim, but the type of allegations that plaintiffs do include have generally been rejected as inadequate to support such a theory. *See Smith*, 173 Ill.App.3d at 28, 527 N.E.2d at 350, 122 Ill.Dec. at 852 (citing cases in accord). We therefore find the proposed amendments insufficient to support a concert-of-action theory.

### C. *Alternate Liability*

■ Unlike the newly developed concept of market share liability, the theory of al-

---

**1.** Indeed, the market share theory has been adopted primarily in DES cases and in some asbestos cases, but has not been expanded to apply generally to damaged suits based on injury from a broad range of sources. *See generally, Smith*, 173 Ill.App.3d at 14–16 & n. 13, 527 N.E.2d at 341–42 & n. 13, 122 Ill.Dec. at 843–44 & n. 13.

**2.** Counter to plaintiffs' argument, we find *Morris v. Parke, Davis & Co.*, 667 F.Supp. 1332 (C.D.Cal.1987) (applying California law), of little guidance here since it is unclear in *Morris* whether the plaintiffs were able to identify all

of the defendants, and language in the opinion suggests that they were not. *Id.* at 1334 ("Plaintiffs concede their inability to identify the manufacturer of the particular vaccine administered to plaintiff ..."). In contrast, here plaintiffs have identified all those possible defendants whose products killed Poole. Further, to the extent that the *Morris* court adopted a novel theory of liability in determining the course that California state courts would follow, we find no indication in the case law that Illinois courts would apply the same approach.

ternate liability was introduced in 1948 in *Summers v. Tice* and has been adopted by the Restatement. Under this theory,

> [w]here the conduct of two or more actors is tortious, and it is proved that the harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.

Restatement, § 433B(3). As traditionally applied, the theory requires that each negligent actor prove that his actions did not cause the plaintiff's injury, and in failing such proof all defendants are liable. *Summers*, 33 Cal.2d at 88, 199 P.2d at 5.

The Illinois Supreme Court has yet to address the precise issue before us—whether the theory embodied in *Summers* applies to shift the burden in a case where an AIDS victim is able to identify the universe of negligent defendants responsible for transmitting the disease to him. Despite the dearth of case law and the uniqueness of the facts before us, we do not now reject plaintiffs' theory. Although the Illinois Supreme Court has not yet ruled on its applicability in AIDS cases, we attempt a prediction of Illinois law based on lower state court decisions, the general rule on the issue before us, and legal sources such as treatises. *See* 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4507 (1982). In so doing, we are mindful that the Restatement contemplates the development of tort law generally and, specifically, evolution of the theory of alternative liability:

> It is possible that cases may arise in which some modification of the rule [of alternative liability] may be necessary because of complications arising from the fact that one of the actors involved is not or cannot be joined as a defendant, or because of the effect of lapse of time, or because of substantial differences in the character of the conduct of the actors or the risks which they have created. Since such cases have not arisen, and the situations which might arise are difficult to forecast, no attempt is made to deal with such problems in this Section. The [alternative liability] rule, as stated in sub-

section (3) is not intended to preclude possible modification if such situations call for it.

Restatement § 433B(3) (comment h).

In *Smith*, 173 Ill.App.3d at 31, 527 N.E.2d at 352, 122 Ill.Dec. at 854, the court refused to apply alternative liability to the DES case before it on substantive grounds. The court did not reject the theory out of hand or describe alternative liability as a radical departure from traditional tort law principles, *cf.*, *Coerper v. Dayton–Walther*, No. 85C6887, slip op. at 3 (N.D.Ill. Mar. 27, 1986) [available on WESTLAW; 1986 WL 4111] ("[m]arket share liability is a radical departure from ... traditional tort law"), but held that the theory was not "viable" in DES cases. *Id.* at 38. In so holding, the court relied in part on its conclusion that "alternative liability doctrine contemplates that all defendants who could have possibly injured the plaintiff are before the court," thus ensuring that "at least one of the defendants was directly responsible for the plaintiff's harm." *Id.* at 39. Other courts rejecting the alternative liability theory have done so primarily because not all of the defendants were named in the suits. *See Martin v. Abbott Laboratories*, 102 Wash.2d 581, 689 P.2d 368, 376–77 (1984) (citing cases in accord). *Cf. In re Agent Orange Product Liability Litigation*, 597 F.Supp. 740, 826 (E.D.N.Y.1984) ("None of the courts [considering the theory have] rejected alternative liability when all the defendants were before the court"). Since plaintiffs have identified all of the defendants that could have possibly caused Poole to contract AIDS, this case presents the classic situation contemplated by the alternative liability doctrine. When all defendants are present, courts have adopted the theory. *E.g., Menne v. Celotex Corp.*, 641 F.Supp. 1429, 1436–37 (D.Kan.1986) (upholding alternative liability theory in asbestos case); *Agent Orange*, 597 F.Supp. at 828 (upholding alternative liability theory in agent orange case).

The basic principle generally underlying these decisions is straightforward: "as between an innocent plaintiff and negligent defendants, the latter should bear the cost

of the injury." *Sindell*, 607 F.2d at 936. We endorse this approach and find compelling the following analysis of the effect of adopting the alternate liability theory generally:

> In the mass tort cases ... dropping the requirement that a plaintiff identify a particular defendant as the cause in fact of his injuries does not undermine the principle that a defendant should only be held responsible for the damage it caused as long as a plaintiff can prove general causation, i.e., that he was injured by the type of product or substance manufactured by defendants, and as long as there is a rational method for determining the percentage of the total harm caused to all those damaged by each of the possible defendants, the principle remains intact.

*Agent Orange*, 597 F.Supp. at 823. AIDS is a relatively recently discovered and newly publicized disease without a cure, responsible for taking the lives of increasing numbers of Americans and people worldwide. The case before us presents a set of circumstances not yet confronted by the Illinois Supreme Court and indeed few courts, federal or state, have had the opportunity to consider the legal implications of AIDS-related injuries and deaths—and we anticipate the advent of many more such actions in the future. At this early stage of the litigation, in light of the fact that plaintiffs are able to identify all possible defendants responsible for Poole's death, we are unprepared to reject the theory of alternative liability here. We recognize, however, that factual development in this case, and legal development in the AIDS field, may mandate later rejection of the theory. We simply hold, for now, that the Illinois Supreme Court would follow the vast majority of courts in allowing plaintiffs to proceed on a theory of alternate liability.[3]

---

**3.** Counter to defendant Armour's assertion, under the Restatement simultaneous infliction of injury is not a prerequisite to the application of alternative liability. Indeed, the illustrations of the theory contained in the Restatement include a car collision in which one crash follows another and injury is inflicted subsequently. Fur-ther, application of the alternative liability theory has been endorsed in environmental cases in which several defendants, each acting independently, pollute a plaintiff's land. *Agent Orange*, 597 F.Supp. at 823. In such circumstances simultaneity has not been required.

## CONCLUSION

For the foregoing reasons we deny plaintiffs' motion to amend the complaint to include market share and concerted action liability theories and grant the motion as it pertains to language describing the theory of alternate liability.