**Charlene KINNETT**

v.

**MASS GAS & ELECTRIC SUPPLY CO.; Easy Heat–Wirekraft; Chromalox–E.L. Wiegand; Raywall Electric Heat Products.**

Civ. No. 87–38–D.

United States District Court,
D. New Hampshire.

June 26, 1989.

**696**

Alan Cantor, Boston, Mass., and John J. Cronin III, Bennington, N.H., for plaintiff.

Ronald J. Lajoie, Manchester, N.H., for Mass Gas & Elec. Supply Co.

Joseph M. McDonough III, Manchester, N.H., for Easy Heat–Wirekraft.

Jeffrey B. Osburn, Manchester, N.H., for Raywall Elec. Heat Products.

Raymond R. Ouellette, Dover, N.H., for Chromalox–E.L. Wiegand.

## ORDER

DEVINE, Chief Judge.

In this products liability action,[1] plaintiff Charlene Kinnett alleges that defective heat tape [2] caused a house fire in which she sustained severe injuries. Because the heat tape was lost subsequent to the fire, plaintiff cannot identify the manufacturer responsible for producing it. Plaintiff sues the retailer from whom the defective heat tape was allegedly purchased and the three manufacturers who supplied heat tape to that retailer. Plaintiff brings counts against each manufacturer sounding in negligence, breach of warranty, failure to warn, and strict liability.[3] Plaintiff asserts that the three manufacturers may be held liable under Maine law [4] on a theory of alternative liability. The matter is currently before the Court on the manufacturers' motions for summary judgment and to dismiss [5] and plaintiff's objections thereto. Because the motions may be resolved on the documents as filed, defendant Easy–Heat's motion for a hearing is herewith denied. *See* Local Rule 11(g).

### *Factual Background*

On the evening of January 29, 1984, plaintiff was asleep in the home of her friends Raymond and Cienzie Linscott in Kittery, Maine, when she awoke to find the house on fire. Although she jumped from a window to escape the blaze, she sustained serious burns.

---

1. Jurisdiction is asserted by way of 28 U.S.C. § 1332, the parties being diverse and the amount in controversy being in excess of $10,000.

2. Heat tape is an electrical product which is wrapped around water pipes to prevent them from freezing in the winter. A small current of electricity is sent through the wire in the tape, which generates heat. Deposition of George Algrin at 5–6.

3. Plaintiff's motion to file her Fourth Amended Complaint is herewith granted.

4. In an Order dated August 31, 1988, the Court ruled that Maine law applies to this litigation.

5. Raywall's motion to dismiss presents the same issues raised in the motion for summary judgment. Because the Court has considered documents outside the pleadings in resolving the pending motions, the Court treats Raywall's motion to dismiss as a motion for summary judgment. *See* Rule 12(b)(6), Fed.R.Civ.P.

Joseph Levasseur, an investigator from the Maine State Fire Marshal's Office, investigated the fire and determined that it had started in a closet located in the kitchen of the Linscott home. Mr. Levasseur discovered what he determined to be the remains of heat tape and a heat tape thermostat in the area of the closet and concluded that the heat tape had caused the fire by igniting combustible materials. He removed the remnants of the heat tape and the thermostat, but they were subsequently lost.

The Linscotts purchased their home from Doris and Joseph Boucher in 1983. Mr. Boucher installed heat tape on the water pipes in the kitchen closet in the early 1970's. At that time, Mrs. Boucher worked at Mass Gas in Portsmouth, New Hampshire. Although the parties dispute the issue of where the heat tape in the closet was purchased, there is some evidence it was purchased at Mass Gas.[6] George Algrin, the manager of the Mass Gas store at which Mrs. Boucher was employed, has testified that Mass Gas sold three brands of heat tape during the relevant time period: Easy Heat, Chromalox, and TPI (manufactured by Raywall Co.). The three brands of heat tape were of different colors, but Mrs. Boucher cannot recall the color of the heat tape she purchased.

**6.** In February 1986 Doris and Joseph Boucher signed a statement which had been prepared by Robert Olson, an investigator hired by the plaintiff, that the heat tape Mr. Boucher installed was purchased at Mass Gas. In subsequent affidavits and depositions, both have recanted the substance of the February 1986 statement. Mr. Olson, however, has submitted an affidavit stating that Mrs. Boucher specifically and unequivocally told him that she had purchased the heat tape at Mass Gas. In addition, Joseph Boucher testified at deposition that the heat tape he installed did not have a thermostat, and thus could not be the heat tape which caused the fire. On the basis of the factual dispute surrounding the conflicting statements of Doris and Joseph Boucher and Robert Olson, the Court entered an order on October 19, 1988, denying summary judgment to defendant Mass Gas.

**7.** Plaintiff originally asked the Court to apply the theory of market share liability, but now concedes that the courts of Maine would not recognize that theory under the circumstances herein presented. The Court agrees that market

## Discussion

Easy Heat, joined by Chromalox and Raywall, moves for summary judgment, asserting that there is no evidence which plaintiff can produce which identifies the manufacturer of the heat tape in question. Plaintiff concedes that she is unable to identify the manufacturer of the heat tape which caused her injuries, but urges the Court to allow her to proceed on a theory of alternative liability.[7]

"Under traditional products liability law, the imposition of liability depends upon the plaintiff's proving that the defendant manufacturer made the product that caused the plaintiff's injury." *Starling v. Seaboard Coast Line R.R.*, 533 F.Supp. 183, 187 (S.D. Ga.1982); *see also McCormack v. Abbott Labs*, 617 F.Supp. 1521, 1524 (D.Mass. 1985). Alternative liability dispenses with this traditional causation requirement.

The theory of alternative liability was introduced in the California case of *Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1 (1948). In that case, the plaintiff was injured when his two hunting companions negligently fired their guns toward him. Although the plaintiff was injured by only one shot, he could not ascertain which defendant fired the shot that hit him. The California Supreme Court determined that both hunters had been negligent, and shifted the burden of proof to the defendants to

share liability is not appropriate under these circumstances because that theory applies when substantially all manufacturers of a given product, usually a fungible generic good, are joined as defendants. *See, e.g., Sindell v. Abbott Labs,* 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924, *cert. denied,* 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980).

Because plaintiff originally asserted the market share theory of liability, defendant Raywall objects to plaintiff's belated assertion of alternative liability theory, raised for the first time in response to defendants' memoranda. However, having received briefing from the parties on the issue of alternative liability, the Court chooses to review the substance of the allegations to determine whether they support a valid claim for relief. *See Poole v. Alpha Therapeutic Corp.,* 696 F.Supp. 351, 352-53 (N.D.Ill.1988) (court considered applicability of alternative liability theory, although plaintiff's complaint labeled counts "market share liability").

prove that they had not injured plaintiff. The court stated:

> When we consider the relative position of the parties and the result that would flow if plaintiff was required to pin the injury on one of the defendants only, a requirement that the burden of proof on that subject be shifted to defendants becomes manifest. They are both wrong-doers both negligent toward plaintiff. They brought about a situation where the negligence of one of them injured the plaintiff, hence it should rest with them each to absolve himself if he can. The injured party has been placed by defendants in the unfair position of pointing to which defendant caused the harm.

*Id.*, 199 P.2d at 4.

Alternative liability theory has been adopted by the Restatement (Second) of Torts § 433B(3), which states:

> Where the conduct of two or more actors is tortious, and it is proved that the harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.

Under the rule, a defendant may be held liable even though its tortious actions did not actually cause the plaintiff's injuries. The policy behind this dramatic exception to the causation requirement is the "injustice of permitting proved wrongdoers, who among them have inflicted an injury upon the entirely innocent plaintiff, to escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm." Restatement, *supra*, § 433B, comment f.

The Maine Supreme Court has never adopted the theory of alternative liability.[8] However, a review of those cases in other jurisdictions in which the theory has been applied compels the conclusion that even if the Maine Supreme Court were to adopt the theory of alternative liability, it would not do so in this case.[9]

The Court finds and rules that application of the theory of alternative liability is not appropriate in this case because plaintiff is unable to establish that all defendants have acted tortiously toward her. In *Summers v. Tice,* an important basis of the court's decision was the fact that "both wrongdoers [were] negligent toward the plaintiff." *Summers v. Tice, supra,* 199 P.2d at 4. The court emphasized that defendants by their negligent acts were in some sense responsible for the plaintiff's inability to identify the one who caused his injury.

Subsequent cases have recognized that all defendants must have some factual connection to the event which forms the basis of the plaintiff's claim. *See, e.g., Minnich*

---

8. Plaintiff argues that a federal magistrate's decision from the United States District Court for the District of Maine which discussed alternative liability establishes that Maine courts would adopt the theory. *See Dube v. Pittsburgh–Corning Corp.,* 1988 WESTLAW 64733 (D.Me. June 9, 1988). However, *Dube* is an unpublished decision in which the validity of the theory of an alternative liability was apparently not at issue and which was reversed on appeal on other grounds. *See Dube v. Pittsburgh–Corning,* 870 F.2d 790 (1st Cir.1989). Thus, the Court considers it to be of limited precedential value. *See Dayton v. Peck, Stow & Wilcox Co.,* 739 F.2d 690, 694 n. 5 (1st Cir.1984) (unpublished opinion of Massachusetts Superior Court not considered persuasive precedent). Moreover, *Dube* is distinguishable on its facts. In *Dube,* plaintiff had been exposed to each defendant's asbestos products, but could not establish which defendant's product caused what portion of her injury. In the instant case, plaintiff was exposed to the product of only one heat tape manufacturer.

9. Defendant Chromolox argues that this court should refrain from predicting whether Maine courts would adopt the theory of alternative liability because it is a novel question which the Maine courts have not yet had an opportunity to address. *See Dayton, supra,* 739 F.2d at 694–95 (district court sitting in diversity in "particularly poor position" to endorse fundamental policy innovation implicit in new theory of liability). However, the court finds the issue is moot because, even assuming that Maine would adopt the theory, the theory is not applicable to the facts alleged. *See Morton v. Abbott Laboratories,* 538 F.Supp. 593, 598–600 n. 9 (M.D.Fla. 1982) (assuming Florida courts would adopt alternative liability theory in appropriate case, but rejecting its applicability to the facts alleged); *see also Ryan v. Eli Lilly & Co.,* 514 F.Supp. 1004, 1016 (D.S.C.1981).

*v. Ashland Oil Co.,* 15 Ohio St.3d 396, 473 N.E.2d 1199, 1203 (1984) (Holmes, J., dissenting) ("the plaintiff must demonstrate that each defendant breached a duty of care owed to him"); *Tirey v. Firestone Tire & Rubber Co.,* 33 Ohio Misc.2d 50, 513 N.E.2d 825, 826 (Com.Pl.1986) (defendants must be "present either in person or by the presence of their product at the occurrence"); [10] *cf. Anderson v. Somberg,* 67 N.J. 291, 338 A.2d 1 (N.J.), *cert. denied,* 423 U.S. 929, 96 S.Ct. 279, 46 L.Ed.2d 258 (1975) (plaintiff injured when surgical instrument broke during operation may sue doctor, hospital, and distributor and manufacturer of instrument; "all those in custody of patient or who owed him a duty" have burden to establish their freedom from liability). As the Fifth Circuit stated in a case rejecting the applicability of alternative liability in an asbestos case, "all of [the alternative liability cases] concern defendants who were proved to have some factual connection with the plaintiff's injury; to apply them to defendants as to which there is no proof of any such connection would beg the question of causation entirely." *Thompson v. Johns–Manville Sales Corp.,* 714 F.2d 581, 582–83 (5th Cir. 1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1598, 80 L.Ed.2d 129 (1984).

■ In the instant case, there is no dispute that plaintiff was injured by only one brand of heat tape. Therefore, there is no possibility that each manufacturer's product could have caused plaintiff's injury. The fact that plaintiff has narrowed the possible manufacturer defendants to the three who sold their heat tape through Mass Gas is not a sufficient factual connection to warrant application of the doctrine. *See, e.g., Senn v. Merrell–Dow Pharmaceuticals,* 305 Or. 256, 751 P.2d 215 (1988) (plaintiff injured by DPT vaccine may not use alternative liability theory to bring suit against only two possible manufacturers of vaccine); *Garcia v. Joseph Vince Co.,* 84 Cal.App.3d 868, 148 Cal.Rptr. 843 (Ct.App. 2d Dist.1978) (complaint dismissed when plaintiff could not identify which of two sabre manufacturers had supplied the defective blade: "[plaintiff] has not shown that either [defendant] has violated a duty to him (i.e. produced the defective product)"); *cf. Poole, supra* note 7, 696 F.Supp. 351 (plaintiff who contracted AIDS from antihemophiliac factor may use alternative liability theory in suit against complete market of manufacturers, processors, marketers, and distributors from whom plaintiff purchased factor over his lifetime); *Minnich, supra,* 473 N.E.2d at 1200–01 (alternative liability applies when plaintiff sues two manufacturers of a generic chemical supplied to employer which caused his injury).

Plaintiff asserts that the allegation that all manufacturers acted tortiously, i.e., produced defective heat tape, and that one manufacturer's heat tape caused her harm is sufficient to support application of the doctrine. Plaintiff relies on cases in which alternative liability has been applied to manufacturers of defective products even though there was no proof that the plaintiffs were actually exposed to each manufacturer's goods. *See, e.g., In re Agent Orange Product Liab. Litig.,* 597 F.Supp. 740, 822 (E.D.N.Y.1984), *aff'd* 818 F.2d 145 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *Abel v. Eli Lilly & Co.,* 418 Mich. 311, 343 N.W.2d 164 (1984) (DES litigation), *cert. denied sub nom., E.R. Squibb & Sons v. Abel,* 469 U.S. 833, 105 S.Ct. 123, 83 L.Ed.2d 65 (1984).

■ But these cases are all so-called "mass tort" cases in which parties were exposed to inherently defective generic products which caused harm at a much later date, making identification of the specific manufacturer who caused the plaintiffs' harm impossible. *See, e.g., In re Agent Orange, supra,* 597 F.Supp. at 818 (Agent Orange shipped in 55–gallon drums to Vietnam where it was mixed in large tanks, "making identification of the individ-

---

**10.** Contrary to plaintiff's assertion, *Tirey* does not "rest on an erroneous reading" of *Minnich, supra.* In *Minnich,* both defendants were present "by the presence of their product" because both defendants had allegedly supplied the injury-causing chemical, ethyl acetate, to plaintiff's employer.

ual manufacturer's Agent Orange impossible"); *see also McCormack, supra,* 617 F.Supp. at 1525 (discussing problems of identification in DES cases in context of market share liability). The few courts which have been willing to expand the theory of alternative liability in this context have done so based on the compelling nature of the unique factual circumstances presented. *See Abel, supra,* 343 N.W.2d at 173 (court stated it was "fashioning and approving a new DES-unique version of alternative liability"); *see also Poole, supra,* 696 F.Supp. at 354–56 (discussing unique circumstances presented by plaintiff who contracted AIDS from antihemophiliac factor); *cf. Sindell, supra,* 607 P.2d at 936 (adaptation of the rules of causation and liability appropriate where modern "science and technology create fungible goods which may harm consumers and which cannot be traced to any specific producer"). As stated by the court in which Vietnam veterans litigated their claims against Agent Orange manufacturers:

> In the mass tort cases ... dropping the requirement that a plaintiff identify a particular defendant as the cause in fact of his injuries does not undermine the principle that a defendant should only be held responsible for the damage it caused. As long as a plaintiff can prove general causation, i.e., that he was injured by the type of product or substance manufactured by defendants, and as long as there is a rational method for determining the percentage of the total harm caused to all those damaged by each of the possible defendants, the principle remains intact.

*In re Agent Orange, supra,* 597 F.Supp. at 823.

Heat tape is not the type of product to which the "mass tort" theory of alternative liability applies. Plaintiff has not alleged that the products are generic or fungible, and, indeed, the evidence presented thus far demonstrates that they may not be so characterized. *See* Deposition of George Algrin at 19–20 (products of different colors); *cf. Cummins v. Firestone Tire & Rubber,* 344 Pa.Super. 9, 495 A.2d 963, 972 (1985) ("allegation that multi-piece rim as-

semblies are 'generically similar' falls far short" of necessary allegation that products be fungible with identical defective qualities).

Plaintiff's counsel state that they are examining all of the brands of heat tape to determine whether they have common defects. However, the Court believes that, outside of the mass-tort context, alternative liability theory does not allow a plaintiff to sue a manufacturer to whose product plaintiff has not been exposed based on the fortuitous discovery that the product shares a common defect with other products of the same type. Unlike the mass tort cases, plaintiff's inability to identify the manufacturer of the heat tape which caused her injuries can in no part be attributed to the nature of defendants' products, the product defects, or the manner in which they were distributed. Instead, the plaintiff's inability to establish the causation requirements is attributable to the fact that the evidence was lost. Courts have never applied alternative liability theory in an analogous situation.

For example, in *Bradley v. Firestone,* 590 F.Supp. 1177 (D.S.D.1984), plaintiff was injured in an accident involving a multi-piece wheel assembly. The wheel was retained after the accident, but was subsequently lost. Plaintiff sued numerous manufacturers of multi-piece wheel assemblies. The court granted defendants' motion for summary judgment on plaintiff's claim of alternative liability. The court found the theory to be inapplicable because only one defendant made the defective tire rim in question. The court distinguished a case in which alternative liability was applied to DES manufacturers by noting that DES is a fungible good which could not be traced to a specific producer. The court stated that the defendants' goods were identifiable because each stamped their rim with an identification number, and the only reason plaintiff could not identify the manufacturer who caused his harm was because the rim was lost, through no fault of the defendants. *Id.* at 1179. *See also Long v. Krueger,* 686 F.Supp. 514, 519 (E.D.Pa.1988) (plaintiff injured by post of-

fice stool which was lost subsequent to accident may not recover under alternative liability theory; "even if the list of potential defendants is restricted to those found to have stools in the Post Office, a fact finder could hold one of the present defendants liable only on the basis of a guess or speculation"); *Layton v. Blue Giant Equipment,* 599 F.Supp. 93 (E.D.Pa.1984) (applying Pennsylvania law) (plaintiff who could not identify lift-jack which injured her on the job could not utilize alternative liability theory to sue all manufacturers of lift-jacks supplied to her employer); *Tirey, supra,* 513 N.E.2d 825; *Cummins, supra,* 495 A.2d at 972 (plaintiff injured by exploding multi-piece tire and rim assembly which was subsequently lost may not sue all such manufacturers under alternative liability theory). Although the courts in the above cases relied on some factors in reaching their decisions which distinguish them from the instant case,[11] the Court finds the essential basis of the opinions to be the absence of a factual connection to all of the defendants.

Rule 56(c), Fed.R.Civ.P., provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affiavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden is on the moving party to show that there is no genuine dispute as to any issue of material fact, *e.g., Finn v. Consolidated Rail Corp.,* 782 F.2d 13, 15 (1st Cir.1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must view the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

In the instant case, there is no dispute that plaintiff is unable to identify the manufacturer of the heat tape which caused her harm. The defendant manufacturers may only be held liable if the court applies the theory of alternative liability. Because the court finds and rules that the theory of alternative liability is not applicable to this case, the defendant manufacturers' motions for summary judgment (documents no. 78 and 90) must be and herewith are granted.[12]

SO ORDERED.

---

**11.** For example, in *Long, supra,* 686 F.Supp. at 519, and *Layton, supra,* 599 F.Supp. at 94, the courts relied in part on the fact that the plaintiffs could have identified the manufacturers of the products which caused their injuries if they had been more diligent. In the instant case, plaintiff was not responsible for the fact that the heat tape could not be identified.

**12.** This Court has previously granted plaintiff's motion to extend discovery and the filing of pretrial materials to a date 90 days after the date of this Order. *See* Order of Clerk of Court James Starr dated January 23, 1989. Accordingly, said materials shall be filed by September 25, 1989.