495 A.2d 963

**Richard E. CUMMINS, Jr., Appellant,**

**v.**

**The FIRESTONE TIRE & RUBBER CO., Goodyear Tire & Rubber Co., Mack Trucks, Inc., Mill Service, Inc., Brake Drum and Equipment Co., Vivian Yukevich, Kelsey-Hayes Co., Redco Corp., the Budd Co., Trailmobile, Inc., Fruehauf Corp., Coll Tire Distributors, Inc., Firestone Canada, Inc., Motor Wheel Corp., the Dayton Rubber Co., Erie Malleable Iron Co., Heil Co., Webb Co., Alcoa Aluminum Corp., Gunite Co.**

**v.**

**McCLAIN AND CONNELLY AUTO REPAIR.**

Superior Court of Pennsylvania.

Argued March 4, 1985.

Filed July 5, 1985.

was the person who took out the insurance policy and paid the premiums. 278 Pa.Superior Ct. at 554–55, 420 A.2d at 680–81.

12

Robert A. Seewald, Pittsburgh, for appellant.

Lowell A. Reed, Jr., Pittsburgh, for Firestone Tire, appellee.

Howard K. Hilner, Pittsburgh, for Redco Corp., appellee.

Joseph A. Macerelli, Pittsburgh, for Trailmobile, Inc., appellee.

James F. Manley, Pittsburgh, for Fruehauf, appellee.

Scott E. Becker, Pittsburgh, for Firestone Canada, Inc., appellee.

David P. Helwig, Pittsburgh, for Heil Co., appellee.

Edward C. Schmidt, Pittsburgh, for The Budd Co., appellee.

Before OLSZEWSKI, HESTER and SHIOMOS, JJ.*

HESTER, Judge:

The matter before us for review is an Order sustaining preliminary objections of three of the twenty appellees herein, Fruehauf Corporation (hereinafter "Fruehauf"), The Budd Company (hereinafter "Budd"), and The Heil Company (hereinafter "Heil").

The issue is whether appellant, who cannot identify the particular manufacturer of the tire and rim assembly which allegedly caused his injury, or in fact the offending product itself, can maintain an action against those manufacturers who produced substantially all of the particular parts of the machinery.

Under the circumstances of this case, we hold that appellant has failed to state a cause of action against these appellees.[1]

On December 8, 1980, appellant entered a service garage to visit a friend-employee. While there, appellant was allegedly injured when a multi-piece tire and rim assembly exploded as it was being inflated. The wheel was being inflated by McClain Tire Service, which repaired and serviced the vehicles of Mill Service, Inc. as agent for Coll Tire Distributors Company.

The actual multi-piece assembly involved in the accident was irrevocably lost. After the accident, the service garage operator remounted the rim and tire parts without incident and returned them to the stream of commerce, but failed to notice the brand or manufacturer of the assembly.

Appellant's initial complaint, filed on April 30, 1982, alleged causes of action in negligence and strict liability against five appellees. By consent of court, appellant eventually filed three subsequent amended complaints, adding

---

* Judge Thomas N. Shiomos, Senior Judge of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

1. In reaching this result, we do not rule upon those preliminary objections filed by other appellees, but which were not considered by the lower court in view of the within appeal.

fifteen additional appellees and three more counts. Thus, the complaint, as amended, identified the following as appellees:

*Manufacturers of truck wheel rims*:
Firestone, Goodyear, Kelsey-Hayes, Redco, Budd, Firestone-Canada, Motor Wheel, Dayton Rubber, Erie Malleable, Webb, Alcoa and Gunite.

*Owner of fleet of trucks*:
Mill Service, Inc.

*Manufacturers of truck trailers*:
Trailmobile, Fruehauf and Heil

*Manufacturer of truck tractors*:
Mack Trucks

*Supplier of truck tires and rims*:
Brake Drum and Equipment and Coll Tire Distributors

*Owner of real estate where accident occurred*:
Vivian Yukevich [2]

The three additional causes of action, industry-wide liability, market share liability, and concerted action liability, were asserted against the twelve listed manufacturers of truck wheel rims.

With respect to the three parties involved in this appeal, appellant asserted claims in negligence and strict liability against Fruehauf, Heil, and Budd. He further asserted the three above-mentioned causes of action against Budd.

Appellees Fruehauf, Heil and Budd filed preliminary objections in the nature of a demurrer. Specifically, they contended that appellant failed to identify any appellee as the manufacturer or supplier of the multi-piece rim which allegedly injured appellant. Appellees maintained that appellant's inability to allege the specific identity of the manufacturer or supplier of the product was fatal to his claims in negligence and strict liability.

Appellee Budd further contended that appellant's theories of market-share, industry-wide and concerted-action liability are not the law in this Commonwealth and are unconstitu-

2. Vivian Yukevich was dismissed from this lawsuit by the court below.

tional. Moreover, appellee Budd maintained that even if they were specifically adopted in this jurisdiction, appellant has failed to allege the requisite elements of those causes of action.

On January 25, 1983, oral argument was held before the trial judge, who sustained the preliminary objections filed by appellees Fruehauf, Budd, and Heil. In the opinion of the court, the complaint as amended failed to identify the manufacturer or supplier of the product. Therefore, appellant failed to allege the requisite elements of an action in negligence or strict liability. Moreover, the court determined that the amended complaint failed to set forth any other cognizable cause of action. The complaint was dismissed as to Budd, Heil, and Fruehauf. This appeal followed.

 Initially, we observe that this Court's scope of review of a challenge to the sustaining of preliminary objections in the nature of a demurrer is a stringent one. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Cianfrani v. Com., State Employee's Retirement Bd.,* 505 Pa. 294, 479 A.2d 468 (1984). Any doubt should be resolved in favor of overruling the demurrer. *Vattimo v. Lower Bucks Hospital, Inc.,* 502 Pa. 241, 465 A.2d 1231 (1983); *In re Estate of Thompson,* 332 Pa.Super. 360, 481 A.2d 655 (1984); *Del Turco v. Peoples Home Sav. Ass'n,* 329 Pa.Super. 258, 478 A.2d 456 (1984). If any theory of law will support a claim raised by the complaint, a dismissal is improper. *Cianfrani v. Com., State Employee's Retirement Bd., supra.* This Court, in reviewing such an order, makes no factual findings with regard to the matters in dispute.

### Count I—Negligence

 The requisite elements of a cause of action in negligence are 1) a duty on the part of the defendant to conform to a certain standard of conduct with respect to the plaintiff, 2) a failure by the defendant to so conform, and 3) a

reasonably close causal connection between the defendant's conduct and some resulting injury to the plaintiff. This last element is commonly known as proximate cause. *See generally, Prosser*, LAW OF TORTS, § 30 (4th ed. 1971).

■ Appellant herein alleges that he was injured by the explosion of a tire and multi-piece rim assembly, although it is unclear from the complaint whether he avers that the tire or the multi-piece rim, or both, exploded. Appellant acknowledges his inability to identify the exact product involved in this accident. Appellant's second amended complaint states:

75(b) Plaintiff, RICHARD CUMMINS, is not at fault for the absence of evidence identifying the exact product involved in this accident, but rather the absence of proof is due to the conduct of the additional defendant, McCLAIN TIRE SERVICE;

Further, appellant's third amended complaint states:

45(e) Plaintiff believes and therefore avers that the multi-piece rim-ring assembly, which caused the injuries and damages to plaintiff, was distributed, supplied and/or sold to Mill Service, Inc. either as original equipment on either a Mack trailer, a Fruehauf trailer, a Trailmobile trailer, or a Heil trailer, all of which were sold to Mill Service, Inc. equipped with multi-piece rims; or that said defective multi-piece rim-ring assembly and/or certain parts thereof, were distributed, supplied and/or sold to Mill Service, Inc. by Brake Drum and Equipment Company as replacement parts to service the Mill fleet of truck tractors and truck trailers.

Although appellant's complaint states that he sustained injuries, it fails to connect any particular appellee to the cause of those injuries. Appellant is unable to specify whether the tire and wheel assembly in question was one originally provided by a truck tractor or trailer manufacturer, or by a replacement part supplier.

■ Consequently, appellant's claim based on negligence must fail. The lower court's holding is in complete accord

with the general rule requiring identification of appellee as the manufacturer or seller of the particular offending product, before appellant's injuries may be found to be proximately caused by some negligence of appellee. Absent such identification, there can be no allegations of duty, breach of duty or legal causation, and hence there can be no liability. *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978).

Appellant contends the sustaining of appellees' preliminary objections prematurely terminated discovery. Appellant professes it remains his intention to identify the tortfeasor. Appellant asserts that Pa.R.C.P. 2229(b) allows permissive joinder in order to avert the running of the statute of limitations.[3]

However, the fact remains that the offending product is unavailable for inspection, and therefore, appellant is precluded from identifying the manufacturer or supplier. This is not a defect which could be corrected by further discovery or by granting appellant leave to amend his complaint, since the opportunity to make the necessary identification has been irretrievably lost. This case presents a situation "where it is clear that amendment is impossible and where to extend leave to amend would be futile." *Otto v. American Mutual Insurance Co.*, 482 Pa. 202, 393 A.2d 450 (1978).

■ Moreover, we find no merit to appellant's argument that Pa.R.C.P. 2229(b) circumvents the necessity to identify the tortfeasor in a negligence or strict liability claim. That provision merely allows a plaintiff to join as defendants

---

**3.** Rule 2229. Permissive Joinder

(b) A plaintiff may join as defendants persons against whom he asserts any right to relief jointly, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the liabilities of all such persons will arise in the action.

persons against whom he may assert any right to relief jointly, severally, separately, or in the alternative.

 It does not dispense with the need to plead the appropriate elements of negligence as to each defendant, separately and independently. Undeniably, this rule provides a vehicle for a plaintiff to join defendants in the alternative if uncertain as to the identity of the party actually liable to him. GOODRICH–AMRAM 2d § 2229(b):4. However, the purpose of this rule is not to enable a plaintiff to join defendants in the alternative when the offending product remains unidentified. The causes of action remain separate, as though separate suits had been filed, and must, therefore, meet the traditional standards of sufficiency in pleading by asserting the nature of the liability of each defendant sued. *General Electric Credit Corp. v. Aetna Casualty & Surety Co.*, 437 Pa. 463, 263 A.2d 448 (1970); Pa.R.C.P. 1044. This appellant has failed to do.

### Count II—Strict Liability

██ Section 402A of the RESTATEMENT (SECOND) OF TORTS (1977), adopted in Pennsylvania in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), establishes the strict liability of one who sells any product in a defective condition unreasonably dangerous to the user or consumer.[4] In order to state a cause of action for strict liability in tort, a

---

4. Section 402A provides:
 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or in his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 (a) the seller is engaged in the business of selling such a product, and
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 (2) The rule stated in Subsection (1) applies although
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

plaintiff must allege a sale or other commercial transfer of a product by the defendant.

██ Viewing the complaint most favorably to appellant, we once again find appellant's failure to identify the offending product as a fatal deficiency to his claim. Appellant failed to allege that Fruehauf, Budd, or Heil manufactured, sold, or supplied the product which allegedly caused his injury simply because such information is unavailable to him. Thus, the complaint cannot adequately aver the requisite connection between appellees and the defective product, and cannot support a cause of action in strict liability.

A factually similar case was recently before the United States District Court for the Eastern District of Pennsylvania. In that case, *Klein v. Council of Chemical Associations*, 587 F.Supp. 213 (E.D.Pa.1984), plaintiff had been employed in the printing industry for more than fifty years. He brought an action against manufacturers of printing chemicals, trade associations and a research institute after developing bladder cancer allegedly from exposure to those products.

In dismissing plaintiff's complaint, that court observed that since plaintiff did not know which products caused his injury, he also did not know which, if any, of the defendants manufactured them. In denying plaintiff's products liability claim, the court concluded that § 402A, as adopted by Pennsylvania courts, imposes liability for physical harm caused to the user only upon that person who sold a product in a defective condition. A plaintiff must therefore at least designate the product alleged to be defective in order to recover from the one who sells it. *Id.* at 222. The court likewise held that plaintiff's cause of action in negligence was defeated by his failure to identify a specific product and the resultant, causal connection between the conduct of the defendant and his injuries. We similarly hold in the case at bar that appellant's causes of action in negligence and strict liability were properly dismissed by the lower court as to Fruehauf, Heil, and Budd.

## Count III—Concert of Action

In this, and the following two causes of action, appellant asserts that Budd, solely by virtue of its status as a manufacturer of multi-piece truck rims, is liable to appellant for his injuries.

The theory of liability underlying the cause of action known as "concert of action" is set forth in § 876 of the RESTATEMENT (SECOND) OF TORTS (1977):

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Appellant argues that a successful concert of action theory would allow a plaintiff to sue any one manufacturer of the subject product without regard to direct identification of that particular defendant as the maker of the injury-producing product. Thus, he contends that each person or corporation who commits a tort in concert, but who does not each directly cause the complained-of damages can be found liable pursuant to this cause of action.

█ Appellant's assertion cannot prevail. In order for this cause of action to be viable, there must be acts of a tortious character pursuant to a common design or plan. RESTATEMENT (SECOND) OF TORTS § 876 comment (b) (1977). In the alternative, a defendant must render substantial assistance to another to accomplish a tortious act. As specifically stated in comment (d) to § 876(b), "in determining liability, the factors are the same as those used in

determining the existence of legal causation when there has been negligence...."

As seen above, appellant cannot establish a *prima facie* case of negligence against appellee Budd. Moreover, he has failed to aver that Budd has rendered substantial assistance to those manufacturers who have allegedly engaged in concerted tortious conduct.

Finally, this cause of action has not heretofore been recognized in this Commonwealth as a valid basis for imposing liability. In light of appellant's failure to establish the requisite elements of this count, this case is an improper vehicle for the initial consideration of this cause of action by a court of this Commonwealth. To sustain a concert of action theory in the instant case would render any manufacturer in Pennsylvania liable to any member of the public for the defects of his competitor's products. Such a result is unconscionable.

### Count IV—Industry-Wide Liability

Appellant's two final counts, "industry-wide" liability and "market-share" liability are more appropriate to the situation where the identity of the person who manufactured or supplied the offending product remains undetermined. However, for the following reasons, we find that these novel counts cannot provide appellant with a forum for relief.

The tort of industry-wide liability exists when an injury is caused by one of several known manufacturers, where the precise manufacturer is unidentified and where the manufacturers together adhere to an unreasonable safety standard regarding their product. This tort was enunciated by the United States District Court for the Eastern District of New York in *Hall v. E.I. DuPont de Nemours v. Co., Inc.*, 345 F.Supp. 353 (E.D.N.Y.1972). Therein, thirteen children sustained injuries over a four-year period from the

explosion of blasting caps. An action was instituted against the six blasting cap manufacturers who comprised virtually the entire blasting cap industry in the United States and their trade association. No manufacturer was specifically identified as causing particular injuries.

The court upheld the complaint, reasoning that the industry-wide practice of omitting a warning on individual blasting caps and of failing to take other safety measures created an unreasonable risk of harm. Thus, the burden of proof as to causation shifted to the defendants, who could exonerate themselves only by showing that their product could not have caused the injury.[5]

Appellant attempts to state a cause of action under *Hall.* He alleges joint enterprise and collaboration among defendants in the intentional manufacture, promotion, and distribution of a generically similar defective device with the knowledge that a safer replacement device was available. He further avers that the manufacturers conspired to remain silent and avoid adequate warning to users of multi-piece rim components.

We decline to uphold appellant's complaint under the theory of industry-wide liability. In *Hall,* only six manufacturers represented the entire national blasting cap industry. That court specifically noted that this theory of liability would not be fair and reasonable for an action against a large number of producers, particularly in an industry composed of countless small producers.

Herein, appellant levels these charges against a dozen manufacturers, some great corporations, others small independent operations. Nowhere does he aver that these twelve comprise virtually the *entire* industry. Moreover, in *Hall,* the conclusion that the risk embodied in the product was jointly controlled was based upon allegations that the

---

5. *See* Comment, *DES and a Proposed Theory of Enterprise Liability,* 1978 Fordham L.Rev. 963, 999.

blasting cap manufacturers had delegated some functions relating to safety to its trade association. Such an allegation is missing here.

For the above-mentioned reasons, appellant has failed to establish the tort of industry-wide liability. In addition, as with concert of action liability, this cause of action has heretofore not been recognized by the courts of this Commonwealth as affording a basis for relief to an aggrieved plaintiff, and will not now be so adopted.[6]

### Count V—Market Share Liability

Appellant's final count, market share liability, attempts to hold each defendant liable for damages in proportion to its respective market share of multi-piece rims. In support of this cause of action, appellant relies heavily upon the California case which first embraced this theory, *Sindell v. Abbott Laboratories, et al.,* 26 Cal.3d 588, 163 Cal.Rptr.

6. Industry-wide liability as embodied in *Hall* has now been rejected by virtually every other jurisdiction confronted with this issue. *See Morton v. Abbott Laboratories et al.,* 538 F.Supp. 593 (M.D.Fla.1982); *Starling v. Seaboard Coast Line Railroad Company,* 533 F.Supp. 183 (S.D.Ga.1982); *Ryan v. Eli Lilly and Company,* 514 F.Supp. 1004 (D.S.C.1981); *Gray v. U.S.,* 445 F.Supp. 337 (S.D.Tex.1978); *Davis v. Yearwood,* 612 S.W.2d 917 (Tenn.App.1980); *In re: Beverly Hills Fire Litigation,* No. 77–79 (E.D.Ky.1979) (cited by *Davis v. Yearwood,* supra). *But see Bichler v. Eli Lilly & Co. et al.,* 79 A.D.2d 317, 436 N.Y.S.2d 625 (1st Dept.1981), *aff'd,* 55 N.Y.2d 571, 450 N.Y.S.2d 776, 436 N.E.2d 182 (1982).

As stated by the Superior Court of New Jersey when it rejected the theory:

Adoption of this legal theory would, of necessity, result in total abandonment of the well settled principle that manufacturers are responsible only for damages caused by a defective product upon proof that the defective product was defective and that the defect arose while the product was in the control of defendant. [citation omitted]. And traditional methods of apportioning damages among defendants would also, of necessity, have to be abandoned and new ones fashioned.

. . . .

*Extensive policy shifts of this magnitude should not be initiated by an intermediate apellate court. The appropriate tribunal to accomplish such drastic changes is either the Supreme Court or the Legislature.* *Namm v. Charles E. Frosst & Company,* 178 N.J.Super. 19, 427 A.2d 1121, 1129 (1981) (emphasis added).

132, 607 P.2d 924, *cert. denied,* 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980).

Therein, appellant instituted a suit for personal injuries allegedly caused by her mother's use of the drug diethylstilbestrol ("DES") during pregnancy. The pharmaceutical companies which manufactured the drug utilized a mutually-agreed upon identical formula, resulting in a fungible product. Appellant conceded at trial that she could not identify the manufacturer of the DES which her mother had consumed.

The California Supreme Court held that a defendant could be liable to an injured plaintiff, even though its product was not involved in the accident, based upon its market share of the product. In reaching this result, the court relied upon two key elements present in that case. First, the product was impossible to trace to its source in light of its fungible nature and the resultant absence of any identifying labeling on the containers in which the drug was dispensed to consumers. Second, appellant's attempts to identify the manufacturer were also hampered by the extensive period of time between the use of the drug and the subsequent manifestation of her injuries. Thus, the court did not require appellant to identify which defendant manufactured the offending product. Rather, the court held that unless a defendant could demonstrate that it did *not* manufacture the DES consumed by appellant's mother, liability would be imposed in an amount proportionate to the defendant's respective market share of all sales. Hence, a defendant with no known or provable involvement with the injuries could be forced to pay money damages.

Appellant herein argues that market share liability, as applied in the *Sindell* case, should provide a foundation for his recovery. For the following reasons, we must once again reject appellant's contentions.

The court's holding in *Sindell* was predicated upon the specific facts found therein. As stated above, appellant's inability to identify the manufacturer of the DES which

caused her injuries was through no fault of her own. In addition, she joined 90% of the manufacturers of the offending substance. Finally, the drug was produced from a common formula, rendering all DES products identical. In such instances, that court determined that adaptation of the rules of causation and liability was appropriate where modern "science and technology create fungible goods which may harm consumers and which cannot be traced to any specific product." *Id.* 163 Cal.Rptr. at 144, 607 P.2d at 936.

■■■ Herein, appellant's inability to identify the manufacturer of the multi-piece rim assembly was in no way the fault of the producers of that product. Rather, it was the conduct of additional defendant McClain Tire Service, who reintroduced the offensive product into the stream of commerce, which rendered appellant incapable of identifying his tortfeasor. Next, although appellant asserts that he has sued those manufacturers which account for a high percentage of the multi-piece rims on the market, such averment cannot sustain a shift of the heavy burden to the alleged tortfeasors when the possibility is great that the actual wrongdoer will escape liability. Most significantly, appellant has failed to allege that all of the manufacturers have placed on the market fungible products which share identical defective qualities. The allegation that the multi-piece rim assemblies are "generically similar" falls far short of the standard employed in *Sindell* to extend traditional products liability principles.

Finally, once again, we are confronted with a cause of action novel to the courts of this Commonwealth. The closest any court has come to adopting reasoning similar to *Sindell* was the Court of Common Pleas of Philadelphia County in *Erlich v. Abbott Laboratories et al.,* 5 Phila. 241 (1981). That case also involved a suit for damages resulting from the use of DES. Therein, as in the instant case, plaintiff could not identify the manufacturer of the drug which allegedly caused her injury. That court upheld her

action against those manufacturers who allegedly produced substantially all of that particular drug.

In reaching that result, the court relied not upon market share liability, but on the provisions of § 433B(3) of the RESTATEMENT (SECOND) OF TORTS (1977). That section provides:

> where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused them harm.

Pennsylvania adopted this theory, known as alternative liability, in *Snoparsky v. Baer*, 439 Pa. 140, 266 A.2d 707 (1970). *See also Sommers v. Hessler*, 227 Pa.Super. 41, 323 A.2d 17 (1974).

Although the *Erlich* court proceeded under a different theory, the factors relied upon by that court were very similar to those deemed to be pivotal by the court in *Sindell*. First, plaintiff was unable to identify the manufacturer of the offending product through no fault of her own. Second, she had joined those manufacturers who marketed approximately 90% of the DES in the Philadelphia area. Third, she alleged that all defendants were tortfeasors by placing an allegedly defective product on the market. Finally, she averred that the products were identical and shared the same defective qualities.

The same shortcomings which distinguish this case from *Sindell* serve to differentiate it from *Erlich*. Therefore, *Erlich* does not militate against our decision not to follow either market share liability or alternative liability with respect to the case at bar.

For the preceding reasons, we affirm the order of the lower court sustaining appellees' preliminary objections and remand this case for the disposition of all remaining preliminary motions in a manner consistent with this opinion. Jurisdiction is not retained.