William R. SWARTZBAUER, et al.

v.

LEAD INDUSTRIES ASSOCIATION, INC., et al.

Civ. A. No. 91–3948.

United States District Court, E.D. Pennsylvania.

July 9, 1992.

Richard B. Sigmond, Sagot, Jennings & Sigmond, Philadelphia, Pa., Norman Perlberger, Jeffrey A. Cohen, Perlberger Law Assoc., P.C., Bala Cynwyd, Pa., for plaintiffs.

Thomas M. Kittredge, Morgan Lewis & Bockius, James D. Pagliaro, Philadelphia, Pa., Mary Morrissey Sullivan, Mark L. Sullivan, Sullivan, Sullivan, & Pinta, Boston, Mass., Jonathan F. Bloom, Bennett G. Picker, Bolger, Picker, Hankin & Tannenbaum, Philadelphia, Pa., Donald E. Scott, Timothy S. Hardy, John M. Walker, Kirkland & Ellis, Washington, D.C., Robert C. Heim, Mary A. McLaughlin, Abigail R. Simkus, Dechert, Price & Rhoads, Philadelphia, Pa., Otis Pratt Pearsall, Philip H. Curtis, William H. Voth, Arnold & Porter, New York City, Murray Garnick, Lawrence V. Stein, Arnold & Porter, Washington, D.C., Alan D. Chute, Jones, Day, Reavis & Payne, Pittsburgh, Pa., Michael K. Sullivan, Drinker, Biddle & Reath, Philadelphia, Pa., G. Marc Whitehead, Michael T. Nilan, Scott A. Smith, Minneapolis, Minn., Mark Lynch, Norman L. Haase, Emily Morris Salmons, Dunn, Haase, Sullivan, Mallon, Cherner & Broadt, Media, Pa., James D. Shomper, Jr., Wilmington, Del., Thomas A. Kuzmick, Rawle & Henderson, Steven R. Waxman, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., Glenn Bowers, James W. Orr, Bowers, Orr & Robertson, Columbia, S.C., Paul F. Lantieri, Bennett, Bricklin & Saltzburg, Philadelphia, Pa., Lawrence J. Gornick, James L. Miller, William A. Levin, Amy J. Winn, Brobeck, Phleger & Harrison, San Francisco, Cal., Natalie Tull Greene, David J. Parsells, Thomas P. Grace, LaBrum and Doak, Philadelphia, Pa., Glenn M. Cooper, Ronald Dweck, Paley, Rothman, Goldstein, Rosenberg and Cooper, Bethesda, Md., Mitchell S. Pinsly, Mitchell S. Pinsly, Alan Klein, Cohen, Shapiro, Polisher, Shiekman & Cohen, Andre L. Dennis, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., Charles W. Siragusa, Wade R. Joyner, Crowley, Barrett & Karaba, Ltd., Chicago, Ill., Joanne R. Jenkins, Thompson & Pennell, Joseph R. Thompson, William J. O'Brien, Conrad, O'Brien, Gellman, De Stefano & Rohn, Angelo L. Scaricamazza, Jr., Philadelphia, Pa., for defendants.

MEMORANDUM AND ORDER

YOHN, District Judge.

William R. and Karen L. Swartzbauer, Francis J. and Michelle M. Beckett, Raymond S. and Patricia A. Novak, Joseph T. and Linda L. Brooks purport to bring this class action [1] on behalf of all current and retired painters and their spouses in Pennsylvania and New Jersey who have been occupationally exposed to lead paint and lead pigment products. The seventeen defendants in this action, with the exception of the Lead Industry Association, Inc., (LIA), a trade association, are either manufacturers, or successors in interest to former manufacturers, of lead paint and lead pigment products.[2] Each of the defendants has filed or joined in a motion to dismiss either the complaint in its entirety or various counts. For reasons explained in this memorandum, the court will dismiss Count I, only as to defendant Lead Industries Association and Count X(A)(C) and (D) as to each of the defendants. Because plaintiffs agreed at oral argument to withdraw Count VII, this claim will also be dismissed. In all other respects, the motions to dismiss will be denied and defen-

---

1. The court has not yet determined whether this suit will be maintained as a class action. The parties asked that the court postpone its consideration of the motion requesting class certification until the court decided the numerous motions to dismiss.

2. In addition to the LIA, the defendants named are National Lead Industries, Inc., Atlantic Richfield Company, the Sherwin-Williams Company, SCM Corporation/the Glidden Company, St. Joe Minerals Corporation, E.I. du Pont de Nemours & Company, Carboline Company, Devoe Coatings Company, Duron, Inc., Pratt & Lambert, Inc., Rust-Oleum Corporation, XIM Products, Inc., Ameron Inc., Fuller & O'Brien, Valspar Corporation and Courtaulds Coatings, Inc.

dants will be directed to answer the complaint.

## DISCUSSION

Because these are motions to dismiss the court must accept as true the facts alleged in the complaint and all reasonable inferences which can be drawn from them. *Markowitz v. Northeast Land Company*, 906 F.2d 100 (3d Cir.1990). If plaintiffs can prove any set of facts which will entitle them to the relief they seek the claims should not be dismissed under Federal Rule of Civil Procedure 12(b)(6). *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir.1980). "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the complaint that recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Evaluating the complaint under the applicable standards, the court finds that plaintiff is entitled to present evidence to support each claim raised with the exception of Count VII, which plaintiffs have agreed to withdraw, and those discussed below which the court will dismiss for failure to state a claim.[3]

## COUNT I: STRICT PRODUCT LIABILITY

■ Lead Industry Association (LIA) can not be held liable for harm caused by an allegedly defective product under 402A because it is not a seller or supplier as that term is defined by Pennsylvania law. *Musser v. Vilsmeier Auction Company, Inc.*, 522 Pa. 367, 562 A.2d 279, 281 (1989). *See also, Kohr v. Johns Manville Corpora-*

*tion*, 534 F.Supp. 256, 260 (E.D.Pa.1982). Plaintiffs cite one case, *Hall v. E.I. Du Pont De Nemours & Company, Inc.*, 345 F.Supp. 353 (E.D.N.Y.1972) which they assert supports their attempt to hold LIA strictly liable.

In *Hall*, the court suggested that a strict liability claim against a trade association might be maintained where there was evidence that the particular industry involved delegated product safety and design functions to the trade association. Plaintiffs, in the present action, do not allege that LIA performed any such functions for the lead paint industry. Even if *Hall* were controlling authority, the facts presented in *Hall* are starkly dissimilar from the facts alleged in this instance. Moreover, at least one court in this circuit has expressly held, applying Pennsylvania law, that trade associations cannot be held liable under 402A. *Klein v. Council of Chemical Associations*, 587 F.Supp. 213, 225 (E.D.Pa.1984).

The complaint does not allege that LIA produced, marketed or supplied the defective product in question. Because under Pennsylvania law, LIA cannot be held liable under 402A, Count I against LIA will be dismissed.

## COUNT X(A): CIVIL CONSPIRACY

■ As the court explained in *Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 505 A.2d 973, 980 (1985):

"To state a cause of action for civil conspiracy under Pennsylvania law, a complaint must allege the existence of all elements necessary to such a cause of action (citation omitted). A cause of action for conspiracy requires that two or more persons combine or enter an agreement to commit an unlawful act or to do an otherwise lawful act by unlawful means (citation omitted). Proof of malice is an essential part of a cause of action for conspiracy."

---

**3.** Heeding the court's warning in *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir.1983), that "focusing exclusively on its [Rule 9(b)'s] 'particularity' language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules," this court has denied the motions to dismiss Count IV alleging fraud and

misrepresentation. However, the court does so without prejudice to defendants' right to move, after a reasonable period of discovery, through interrogatories or otherwise, to require plaintiffs to set forth with particularity all of the specific circumstances allegedly constituting fraud upon which plaintiffs intend to rely at the time of trial.

The complaint does not allege that defendants entered into an agreement to commit an unlawful act or to accomplish a lawful act · by unlawful means. Moreover, "[P]roof of malice, i.e, the intent to injure, is essential in proof of a conspiracy." *Thompson Coal Company v. Pike Coal Company,* 488 Pa. 198, 412 A.2d 466, 472 (1979). Plaintiffs do not allege, under this count, that the object of defendants alleged agreement was to injure plaintiffs. "The collective activities of the defendants were knowingly and purposefully designed for the defendants' economic and pecuniary benefit and were performed in furtherance of the defendants' respective and joint business interests." Amended Complaint, ¶ 112. Because plaintiffs have not alleged facts sufficient to support a civil conspiracy claim against defendants, Count X(A) will be dismissed.

COUNTS X(C) and X(D): ENTERPRISE LIABILITY AND ALTERNATIVE AND MARKET SHARE LIABILITY

The enterprise liability theory was first articulated twenty years ago in *Hall,* but found not applicable to the facts presented. 345 F.Supp. 353. Since that time the theory has been widely discussed and almost universally rejected by the courts which have considered it as the basis for imposing liability. The court in *Burnside,* 505 A.2d at 984, described the theory articulated in *Hall:*

> "Enterprise liability exists where (1) the injury-causing product was manufactured by one of a small number of defendants in an industry; (2) the defendants had joint knowledge of the risks inherent in the product and possessed a joint capacity to reduce those risks; and (3) each of them failed to take steps to reduce the risk but, rather delegated this responsibility to a trade association."

The Pennsylvania Supreme Court has not yet addressed the issue but two Superior Court panels confronted with the theory have rejected enterprise or industry wide liability as a possible basis of recovery. In *Cummins v. Firestone & Rubber Company,* 344 Pa.Super. 9, 495 A.2d 963, 970 (1985), the court explained, "[T]he tort of industry-wide liability exists when an injury is caused by one of several known manufacturers, where the precise manufacturer is unidentified and where the manufacturers together adhere to an unreasonable safety standard regarding their product." Because their was no evidence in *Cummins* that the named defendants comprised the total industry and jointly adhered to an unsafe policy, the court found the theory not applicable. Moreover, the court noted that "[I]ndustry-wide liability as embodied in *Hall* has now been rejected by virtually every other jurisdiction confronted with the issue (citations omitted). As stated by the Superior Court of New Jersey when it rejected the theory: ... '[E]xtensive policy shifts of this magnitude should not be initiated by an intermediate appellate court. The appropriate tribunal to accomplish such drastic changes is either the Supreme Court or Legislature (citation omitted).' " 495 A.2d at 971, n. 6. In finding the theory inapplicable in a DES case, the court in *Burnside,* 505 A.2d at 985, also noted that the "theory of enterprise liability has been uniformly rejected by courts considering DES related injuries." 505 A.2d at 984. The court in *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 379 (3d Cir.1990), commented that Pennsylvania courts which have considered the theory and federal district courts predicting Pennsylvania law have all refused to adopt the enterprise or industry-wide theory to impose liability:

> "In examining the available case law analyzing the plaintiff's burden of proof, we see no indication that the courts of Pennsylvania or those predicting the course of Pennsylvania law are prepared to retreat from what is admittedly a stringent standard of proof, even in those cases where the circumstances surrounding the alleged injury make it difficult for a plaintiff to identify the manufacturers of the product responsible for the injury."

Although the enterprise or industry-wide theory has not received outright rejection in Pennsylvania, it has never been adopted by any Pennsylvania court or federal court

applying Pennsylvania law as a means of establishing liability.

The market share liability theory is in a similar posture. It was first articulated in *Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (1980). "Under this concept, defendants are held liable for damages in proportion to their respective market share of the harm producing product." *Vigiolto v. Johns–Manville Corporation*, 643 F.Supp. 1454, 1460 (W.D.Pa.1986).

Although the Pennsylvania Supreme Court has not had occasion to address this theory, several panels of the Superior Court which have considered market share liability, found it inapplicable on the facts presented. In *Burnside*, a DES case, the court determined that even if the court were to adopt such a theory, it was not applicable where the named defendants had exculpated themselves during discovery. 505 A.2d at 986. The *Cummins* court also rejected the theory when plaintiff was unable to identify the product and thus the "market" which he intended to share liability. 495 A.2d at 972.

One district court has predicted that Pennsylvania will adopt this theory of recovery when confronted with an appropriate case. *Vigiolto*, 643 F.Supp. at 1462 ("... we believe that it is fair to conclude as we do that when faced with an appropriate factual situation, the Pennsylvania Supreme Court will expand existing law and will recognize the market share liability theory as an alternative to traditional bases for establishing liability in personal injury suits.") The *Vigiolto* court, however, found the theory not applicable in the context of asbestos suits. 643 F.Supp. at 1464.

■ Even if this court were to predict that Pennsylvania would adopt either of these theories of collective liability, enterprise or market-share, each is inapplicable given the facts alleged in this instance. First, these admittedly novel theories of liability are alternatives only when traditional tort remedies do not provide a remedy. That is, it is only when plaintiffs cannot through any fault of their own identify

the party who caused their injuries that these theories may provide a potential avenue for recovery. "We also agree that the market share and enterprise theories of liability as they have been developed thus far are not available once a specific supplier of a product has been identified." *Glazer v. Cincinnati Milacron, Inc.*, 808 F.2d 285, 289 (3d Cir.1986). *See also, Prelick v. Johns–Manville Corporation*, 531 F.Supp. 96, 98 (W.D.Pa.1982) ("The *Sindell* court recognized the basic tenet of tort liability that a plaintiff must prove that his injuries were caused by an act or instrumentality of an identified defendant, (citations omitted), and concluded that it was only where the plaintiff was unable to identify any defendant who manufactured the specific product that a limited departure from the traditional doctrines of tort liability which would shift the burden to 'industry' defendants to prove which of them caused the injury or in the alternative to share liability on a 'market-share' basis, would be justified.")

Because plaintiffs have identified the products and manufacturers which have caused their injuries and, therefore, can pursue traditional tort remedies, there is no need to adopt these theories as an alternative basis for imposing liability. Plaintiffs' acknowledgment that they can each specifically identify a defendant or defendants who are potentially liable for their injuries precludes them from stating a claim under these alternative theories. Amended Complaint ¶ 134.

■ Finally, plaintiffs purport to state a claim for alternative liability. Pennsylvania adopted alternative liability as a means of recovery in *Snoparsky v. Baer*, 439 Pa. 140, 266 A.2d 707 (1970). "Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm." Restatement (Second) of Torts § 433(B)(3). *See, Vigiolto*, 643 F.Supp. at 1457 (rejecting alternative liability in an asbestos case finding that the theory required that all possible tortfeasors be joined and that it be

alleged that one and only one of the actors caused the harm.)

In this instance, plaintiffs do not allege uncertainty but rather that each can identify a defendant or defendants who have caused the alleged injuries. Because these allegations are inconsistent with the theory of alternative liability as recognized under Pennsylvania law, plaintiffs do not state a claim for relief under alternative liability.

Ordered accordingly.