665 A.2d 1288

Dominique D. SKIPWORTH, a Minor, by Her Legal Guardian, Pandora Williams, and Her Mother and Co–Legal Guardian, Ernestine Richardson, Appellants,

v.

LEAD INDUSTRIES ASSOC., INC., NL Industries Inc., Atlantic Richfield Company, Sherwin Williams Company, SCM Corporation, The Glidden Company, E.I. Dupont De Nemours & Co., Tin Lion Enterprises Inc., Joseph F. Fillion and Francis Fillion, George W. Keehfus, Jr., City of Philadelphia Department of Health, Appellees.

Superior Court of Pennsylvania.

Argued April 24, 1995.

Filed Oct. 13, 1995.

Lawrence Cohan, Philadelphia, for appellants.

Robert C. Heim, Philadelphia, for Atlantic Richfield Company, appellee.

Before ROWLEY, President Judge, and TAMILIA and SAYLOR, JJ.

SAYLOR, Judge:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County entering summary judgment in favor of certain lead pigment manufacturers in this action for personal injuries sustained by Appellant, Dominique Skipworth, after she ingested deteriorated paint which contained lead. We affirm.

Appellant was born on September 18, 1988, and was hospitalized for lead poisoning on three separate occasions between December 10, 1990 and May 8, 1991. She also received outpatient therapy for lead poisoning in August, 1991, and again in June, 1992. During this time, she resided at only one home, located at 2840 West Stiles Street in Philadelphia, which was rented by her guardian, Pandora Williams. This residence was estimated to have been built in or about the year 1870. Testing of Appellant's residence revealed the presence of lead-based paint at various locations throughout the home.

On March 17, 1992, Appellant[1] sued five former manufacturers of lead pigment or their alleged successors ("the pig-

1. Dominique Skipworth, a minor child, filed this action through her legal guardian, Pandora Williams, and her co-legal guardian and moth-

ment manufacturers"),[2] and a trade association, Lead Industries Association, Inc. ("LIA"). Appellants alleged that Skipworth suffered physical and neuropsychological injuries as a result of lead poisoning. Appellants stipulated that they could not identify the manufacturer of the lead pigment which Skipworth ingested, and admitted that they could not identify when such pigment was made, sold, or applied to her home. However, Appellants alleged that they had identified and joined in this action substantially all of the manufacturers of lead pigment used in residential house paint from 1870 until production of lead pigment ceased in 1977, and proceeded against the pigment manufacturers and the trade association by invoking theories of collective liability, namely, market share liability, alternate liability, conspiracy, and concert of action.[3]

The pigment manufacturers and LIA filed a motion for summary judgment contending, *inter alia*, that Appellants were unable to identify the manufacturer of the lead pigment which allegedly caused Skipworth's injuries, and that there was an insufficient basis upon which a jury could be permitted to find that she was poisoned and injured by ingesting lead-based paint. Appellants responded that the issues presented questions of fact to be decided at trial, and should not be decided as a matter of law on a motion for summary judg-

er, Ernestine Richardson. For ease of reference, we will hereinafter refer to the plaintiffs in this action collectively, where appropriate, as "Appellants," and to the minor child, where appropriate, as "Skipworth."

**2.** The manufacturers of lead pigment sued by Appellant included NL Industries, Inc., Atlantic Richfield Company (as the alleged successor-in-interest to International Smelting & Refining Company), The Sherwin–Williams Company, SCM Corporation (as the alleged successor-in-interest to The Glidden Company), and E.I. du Pont de Nemours and Company.

**3.** In addition, Appellants sued the owners of Skipworth's residence, Tin Lion Enterprises, Joseph F. Fillion, and Francis Fillion, and the manager of the property, George Keehfuss, alleging that they had failed to warn Appellants about the presence of lead paint, failed to remove the lead paint before Skipworth moved in, and thereafter removed it in a dangerous manner. Appellants also sued the City of Philadelphia, Department of Health, which allegedly inspected Skipworth's home for lead paint.

ment. Following a hearing, the trial court granted summary judgment in favor of the pigment manufacturers and LIA. This appeal followed.

On appeal, Appellants contend that the case should have been submitted to a jury using one of the asserted theories of collective liability, and argue that the trial court erred in concluding that: (1) market share liability has not been adopted and is not viable in Pennsylvania; (2) this case does not meet the requirements for market share liability under Pennsylvania law; and (3) Appellants' claims for alternative liability, conspiracy, and concert of action are not applicable to this case.

In reviewing motions for summary judgment, Pennsylvania courts apply the following standard:

> Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. No. 1035(b). "The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Marks v. Tasman*, 527 Pa. 132, 135, 589 A.2d 205, 206 (1991). Summary judgment may be entered only in those cases where the right is free and clear from doubt. *Musser v. Vilsmeier Auction Co., Inc.*, 522 Pa. 367, 369, 562 A.2d 279, 280 (1989).

*Pennsylvania State Univ. v. County of Centre*, 532 Pa. 142, 144–145, 615 A.2d 303, 304 (1992); accord, *Anderson v. Moore*, 437 Pa.Super. 642, 645, 650 A.2d 1090, 1092 (1994).

 In their first issue on appeal, Appellants contend that market share liability is a viable theory of recovery in Pennsylvania. In order to maintain a products liability action, a plaintiff must establish a reasonably close causal connection between a particular product manufactured by a defendant and the injuries sustained by that plaintiff. *Mellon v. Barre–National Drug Co.*, 431 Pa.Super. 175, 184, 636 A.2d 187, 191–

192 (1993); *see also, Cummins v. Firestone Tire and Rubber Co.,* 344 Pa.Super. 9, 16, 495 A.2d 963, 967 (1985). With respect to causation, a plaintiff must prove that a particular product of a defendant manufacturer caused his injuries. *Lilley v. Johns–Manville Corp.,* 408 Pa.Super. 83, 596 A.2d 203 (1991). Without such identification a plaintiff cannot allege legal causation, and there can be no liability. *See, Mellon v. Barre–National Drug Co., supra,* citing *Cummins v. Firestone Tire and Rubber Co., supra,* 344 Pa.Super. at 18, 495 A.2d at 967–968.

Some jurisdictions have created an exception to this general rule requiring identification of the manufacturer of the harmful product under a theory known as market share liability, which was first developed by the California Supreme Court in *Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (1980). The *Sindell* case involved a plaintiff who developed cancer as a result of her mother's ingestion during pregnancy of Diethylstilbestrol ("DES"), a drug with an identical formula manufactured by several different companies. Because of the inability to trace the source of the DES due to its fungible nature and the long time lapse between its sale and the development of health problems, the plaintiff was unable to identify, through no fault of her own, the manufacturer of the DES ingested by her mother. The *Sindell* court concluded that the plaintiff need not identify the manufacturer of the DES which caused her injury, and held that manufacturers of products identical to the one that harmed a plaintiff are liable to that plaintiff in proportion to their respective market share, regardless of actual causation.

■ Pennsylvania has not, however, adopted the use of market share liability as a theory of recovery. In *City of Philadelphia v. Lead Industries Asso.,* 994 F.2d 112 (3rd Cir.1993), the City of Philadelphia and the Philadelphia Housing Authority sued certain manufacturers of lead pigment and their trade association to recover the costs of abating the hazards of lead-based paint which the plaintiffs had to incur pursuant to federal regulations. The Third Circuit Court of Appeals analyzed Pennsylvania case law and concluded that

the use of market share liability, alternative liability, and enterprise liability in lead paint litigation would be a significant departure from the requirement that a plaintiff prove proximate cause:

> The Supreme Court of Pennsylvania has never embraced, rejected, or even discussed market share liability. The only Pennsylvania state court that has allowed a plaintiff to utilize market share liability instead of identifying the manufacturer who produced the defective, injury-causing product was a trial court. *See: Erlich v. Abbott Lab.*, 5 Phila. 249 (C.P.1981). Erlich also was a DES case. There, the Court of Common Pleas found that market share liability is appropriate when: (1) all defendants are tortfeasors; (2) the allegedly harmful products are identical and share the same defective qualities; (3) plaintiff is unable to identify which defendant caused her injury through no fault of her own; and (4) the manufacturers of substantially all of the defective products in the relevant area and during the relevant time are named as defendants.... Neither the Superior Court nor the Commonwealth Court, Pennsylvania's intermediate appellate courts, has permitted a plaintiff to proceed using the theory of market share liability.... After canvassing all relevant Pennsylvania law, we have found only a decade-old, trial court opinion that has permitted a plaintiff to proceed under a theory of market share liability. This lone decision is insufficient to establish market share liability as a recognized exception to the proximate cause requirement under Pennsylvania law. Nor has there been a clear authoritative signal that the Pennsylvania Supreme Court would adopt market share liability. No nationwide consensus that market share liability should be embraced exists, as evidenced by the split of authority among the highest state courts that have addressed this issue.

*Id.*, 994 F.2d at 124–125 (footnotes omitted).

The Third Circuit's analysis of the status of market share liability in Pennsylvania was quoted most recently by the Superior Court in *Mellon v. Barre–National Drug Co.*, 431 Pa.Super. 175, 636 A.2d 187 (1993), in which the court conclud-

ed that the plaintiff could not utilize market share liability in the absence of evidence of the use of a particular manufacturer's product by the plaintiff. In *Mellon,* the plaintiff was unable to identify the manufacturers of syrup of ipecac, a drug used to induce vomiting, which was allegedly purchased by the plaintiff's decedent at various locations, and was ingested by her on numerous occasions to lose weight, ultimately resulting in her death. Although the court in *Mellon* based its conclusion on the failure of the plaintiff to satisfy two of the elements necessary to impose market share liability and thus did not reach the issue of whether market share liability should be adopted in Pennsylvania, it noted that:

> "[E]xtensive policy shifts of this magnitude should not be initiated by an intermediate appellate court. The appropriate tribunal to accomplish such drastic changes is either the Supreme Court or the Legislature."

*Mellon v. Barre–National Drug Co., supra,* 431 Pa.Super. at 186 n. 3, 636 A.2d at 192 n. 3, quoting *Cummins v. Firestone Tire and Rubber Co.,* 344 Pa.Super. 9, 24 n. 6, 495 A.2d 963, 971 n. 6 (1985).

Accordingly, since neither our Supreme Court or legislature has adopted market share liability as a theory of recovery in products liability actions, and since Appellants stipulated that they are unable to identify the manufacturer of any of the lead pigment found in the paint at Skipworth's residence which was ingested by her and allegedly caused her injuries, they are unable to satisfy their burden of proof with respect to causation, and summary judgment was properly granted.[4]

Appellants also contend that the trial court erred in declining to apply the theories of alternative liability, conspiracy and concert of action in this case.

**4.** Although concluding that market share liability has not been adopted by Pennsylvania courts, the trial court nevertheless analyzed Appellants' cause of action by reviewing the elements necessary to recover under a theory of market share liability. The trial court concluded that Appellants were unable to prove that the allegedly harmful products were identical, and that it was not clear whether the manufacturers of substantially all of the defective products during the relevant time were included in the action.

The theory of alternative liability holds that where tortfeasors are unable to prove that they have not caused the harm suffered by a plaintiff, they will be held jointly and severally liable for the plaintiff's injury. *Snoparsky v. Baer,* 439 Pa. 140, 266 A.2d 707 (1970); *Sommers v. Hessler,* 227 Pa.Super. 41, 323 A.2d 17 (1974); *see also,* Restatement (Second) of Torts § 433B(3) (1965). In *Snoparsky,* the plaintiff was injured when several individuals threw stones, and one of the stones struck the plaintiff. In *Sommers,* the plaintiff lost his eyesight during a spitball fight on a school bus, and collected damages from each defendant who participated in the fight and could not prove that they did not cause harm to the plaintiff. In both cases, the plaintiffs could proceed under alternative liability because the tortious conduct of each defendant was simultaneous and identical, and the plaintiffs joined all potential tortfeasors as defendants.

Here, the alleged tortious conduct of the pigment manufacturers did not occur simultaneously with the harm suffered by Skipworth since they made and sold various lead pigment products at different times throughout the 100–year period at issue. Moreover, the application of alternative liability in this case would serve to transform this theory into market share liability, the difference being that a defendant who could not prove that its product was not used in Skipworth's residence would be unreasonably exposed to joint and several liability. *See, City of Philadelphia, supra.* Thus, the trial court did not err in declining to apply the concept of alternative liability in this case.

Appellants contend that the theories of conspiracy and concert of action, which impose liability on a defendant who acts as a co-conspirator or accomplice to another wrong-doer, are applicable in this case because the pigment manufacturers ratified decisions to manufacture hazardous products and suppressed information regarding the dangers of their products. However:

> [T]he law of this Commonwealth forecloses the assertion of a cause of action for concerted action where the plaintiff is

unable to isolate a particular manufacturer as a causative agent of his injuries.

*Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 284, 505 A.2d 973, 984 (1985). Here, Appellants are unable to identify the manufacturer of any of the lead pigment found in the paint at Skipworth's residence that was ingested by her and allegedly caused her injuries. Thus the trial court correctly determined that the theories of conspiracy and concert of action were not applicable in this case.

Because we have concluded that the trial court did not err in foreclosing Appellants' theories of collective liability, the order granting summary judgment in favor of the pigment manufacturers and LIA is affirmed.

Order affirmed.